729 A.2d 463 (1999)
321 N.J. Super. 444
In the Matter of an ALLEGATION OF PHYSICAL ABUSE CONCERING L.R. at First Middle School[1] on 3/26/96 (A.V.).
In the Matter of an Allegation of Physical Abuse Concerning K.G. at Second School on 4/12/95 (Z.M.).
In the Matter of an Allegation of Physical Abuse Concerning L.J. at Third School on 3/5/96 (V.P.).
In the Matter of an Allegation of Physical Abuse Concerning D.S. and S.W. at Fourth School on 5/17/96 (C.M.).
In the Matter of an Allegation of Physical Abuse Concerning B.P. at the Second School on 3/1/95 (E.D.).
In the Matter of Allegation of Abuse Concerning P.C. at the Fifth School on 6/16/96 (J.C.).
In the Matter of an Allegation of Physical Abuse Concerning M.J. at First School on 12/18/96 (T.L.).
In the Matter of an Allegation of Physical Abuse Concerning N.R. at the Sixth Elementary School on 2/3/97 (B.B.).
In the Matter of an Allegation of Physical Abuse Concerning A.F. at the Sixth Elementary School on 10/31/96 (R.H.).
In the Matter of an Allegation of Physical Abuse Concerning D.C. at Seventh School on 2/3/97 (A.N.).
In the Matter of an Allegation of Physical Abuse Concerning M.S. at the Eighth School on 5/30/97 (R.B.).
In the Matter of an Allegation of Physical Abuse Concerning L.J. at Second School on 4/23/97 (C.A.).
In the Matter of an Allegation of Physical Abuse Concerning S.H. at Second School on 6/10/97 (Z.M.).
In the Matter of an Allegation of on-going Sexual Abuse Concerning D.J., et al. at the Second School (M.L.).
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1998.
Decided May 26, 1999.
*465 V. Maria Cristiano, for appellants (Claudine M. Liss and Norton, Arpert, Sheehy & Higgins, attorneys; Ms. Cristiano of counsel and on the brief; Ms. Liss, on the brief).
Andrea M. Silkowitz, Assistant Attorney General, for respondent (Peter Verniero, Attorney General, attorney; Ms. Silkowitz, of counsel and on the brief).
Before Judges HAVEY, SKILLMAN and LESEMANN.
*464 The opinion of the court was delivered by SKILLMAN, J.A.D.
Appellants in these fourteen consolidated appeals are teachers presently or formerly employed by the Newark school district who were charged with committing acts of child abuse upon their students. The school district referred those charges to the Division of Youth and Family Services (DYFS), which conducted investigations through its Institutional Abuse Investigation Unit. Although DYFS concluded that the abuse allegations had not been substantiated, it also concluded that the teachers' conduct had placed their students at "undue risk of harm." Consequently, DYFS made findings in each case that the abuse allegations were "not substantiated" but also expressed "concerns" regarding the teachers' conduct. DYFS sent letters reporting these findings to the teachers, the school district and the alleged abused students' parents and guardians. DYFS' letters to the school district also set forth remedial action the district should take to address DYFS' concerns, such as administrative counseling, monitoring and retraining of the teachers. The nature of DYFS' reports to the district are discussed in greater detail later in this opinion.
Several appellants requested an administrative hearing or "dispositional conference"[2] to contest these findings. However, DYFS denied these requests, stating that an opportunity for a hearing is afforded only when DYFS finds that a charge of *466 abuse has been substantiated, thus resulting in an entry in the "Central Registry."[3] Appellants then filed these appeals.
Appellants argue that DYFS does not have the statutory authority to transmit to a school district "findings" that even though child abuse charges against a teacher were "not substantiated," DYFS nevertheless has "concerns" about the teacher's conduct. Appellants also argue that even if DYFS has the statutory authority to notify a school district that charges of child abuse are "not substantiated with concerns," it has no authority to order a district to take specific corrective action or submit a remedial plan which addresses those concerns. In addition, appellants argue that DYFS denied their due process rights by refusing to afford them a hearing to contest its findings, because DYFS' transmittal of those findings to the Newark school district adversely affected their employment rights.
We conclude that DYFS has statutory authority to complete an investigation of alleged child abuse by a teacher with a finding that the charges are "not substantiated with concerns," but it has no authority to order a school district to take specific corrective action or submit a remedial plan. We also conclude that when DYFS submits a report to a school district that it has found a charge of child abuse against a teacher to be "not substantiated with concerns," the teacher has no right to a hearing to contest DYFS' investigatory findings.

I
DYFS has broad authority to investigate allegations of child abuse. Any person with "reasonable cause to believe" that a child has been abused must immediately report this information to DYFS. N.J.S.A. 9:6-8.10. Upon receipt of such a report, DYFS is required to "immediately take such action as shall be necessary to insure the safety of the child." N.J.S.A. 9:6-8.11. Under these statutory provisions, DYFS has authority and responsibility to investigate allegations that a school teacher has abused a student. See East Park High Sch., supra, 314 N.J.Super. at 154, 714 A.2d 339; Blackacre Academy, supra, 304 N.J.Super. at 177-78, 698 A.2d 1275.
N.J.S.A. 18A:6-7a provides that when DYFS completes an investigation of a child abuse complaint against a public school employee, it "shall notify the school district and the employee of its findings." N.J.S.A. 18A:6-7a further provides that "[u]pon receipt of a finding by [DYFS] that such a complaint is unfounded, the school district shall remove any references to the complaint and investigation by [DYFS] from the employee's personnel records." Thus, N.J.S.A. 18:6-7a clearly requires DYFS to report the results of its investigation of a child abuse complaint against a teacher to the teacher's employer, regardless of whether the results are favorable or unfavorable. See also N.J.A.C. 6:29-9.1 to -9.2.
DYFS has adopted administrative regulations which establish three categories of findings that may be made as a result of a child abuse investigation:
1. "Substantiated" when the available information, as evaluated by the Division representative, indicates that a child is an abused or neglected child as defined in N.J.A.C. 10:133-1.3 because the child has been harmed or placed at risk of harm by a parent caretaker, temporary caretaker or institutional caretaker.
2. "Not substantiated" when the available information, as evaluated by the Division representative, provides some indication that a child was harmed or

*467 placed at risk of harm, but does not indicate that the child is an abused or neglected child as defined in N.J.A.C. 10:133-1.3; or 3. "Unfounded" when:
i. There is no evidence of conduct that would pose risk to the child;
ii. There is no evidence that a parent, caretaker, temporary caretaker, institutional caretaker or child was involved; or
iii. The available information indicates that the actions of the parent, caretaker, temporary caretaker, or institutional caretaker were necessary and reasonable and the incident was an accident.

[N.J.A.C. 10:129A-3.3(a).] The regulations also require DYFS to notify the alleged perpetrator, alleged victim and his or her parents or caretaker of the results of the investigation. N.J.A.C. 10:129A-3.4.
In each of the cases involved in these consolidated appeals, DYFS found that the child abuse allegations against the appellant teachers were "not substantiated;"[4] that is, that the "available information ... [did] not indicate that the child is an abused or neglected child as defined in N.J.A.C. 10:133-1.3," but that the investigation "provid[ed] some indication that a child was harmed or placed at risk of harm." N.J.A.C. 10:129A-3.3(a)(2). For example, in the case of appellant C.M., DYFS found that:
Mr. [M.]'s method of intervention was inappropriate. The credible evidence indicates that Mr. [M.] grabs the students by their chins and cheeks. Additionally, Mr. [M.] pushes the chairs of the students into their desks as a means to gain their attention or to make them sit in their chairs in a straight position. Although no excessive force was used, Mr. [M.]'s actions are a violation of the school's policy/procedure. The face is a dangerous contact area and pushing the chairs is a potentially dangerous technique.
DYFS' report to the school district noted that DYFS had previously requested the Acting Principal of C.M.'s school to closely monitor his classes and recommended that the district take additional corrective action "to include but not be limited to an administrative counseling [of C.M.] regarding effective interaction with students."
Appellants argue that DYFS lacks the statutory authority to find that a child abuse charge against a teacher is "not substantiated." Appellants contend that upon the conclusion of an investigation, DYFS must find either that the charges have been "substantiated," in which event it may invoke the full panoply of its remedial powers, or that the charges are "unfounded," in which event neither DYFS nor the teacher's employer may take any action.
We reject this restrictive view of DYFS' investigatory and regulatory powers. "[T]he grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and ... the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562, 384 A.2d 795 (1978). DYFS has been granted broad authority to investigate child abuse allegations, including specific authority to investigate any child abuse allegation against a public school teacher and to report its findings to the teacher's employer. N.J.S.A. 18A:6-7a. An investigation of an abuse complaint against a teacher may *468 disclose conduct which poses a threat to the physical or emotional well-being of the teacher's students even though it does not rise to the level of "child abuse" within the intent of N.J.S.A. 9:6-8.21. Therefore, we are satisfied that DYFS has not only the authority but the responsibility to take reasonable measures to protect students from any threat to their well-being. The most obvious available measure to protect students from a teacher who poses a danger to their safety or welfare is for DYFS to communicate its concerns and recommendations to the school district which employs the teacher. The district can then take whatever action it deems appropriate to address DYFS' concerns, including counseling, transfer of the teacher to another assignment or, in an extreme case, termination of employment. Accordingly, we are satisfied that DYFS has the statutory authority to find that child abuse allegations against a teacher are "not substantiated" but that the teacher's conduct poses a risk of harm to his or her students, and to report those concerns to the school district which employs the teacher. See Blackacre Academy, supra, 304 N.J.Super. at 180, 698 A.2d 1275.

II
We next consider whether DYFS has statutory authority to order a school district to take specific corrective action or submit a remedial plan based on a finding that a child abuse complaint is "not substantiated" but that DYFS has "concerns."
The Legislature has conferred expansive authority upon local boards of education to manage and operate the public schools. These powers include the power to hire, assign, evaluate, transfer, promote, suspend and terminate teachers. N.J.S.A. 18A:25-1; N.J.S.A. 18A:25-6; N.J.S.A. 18A:27-1 to -12; N.J.S.A. 18A:29-14. The Legislature has also conferred comprehensive authority upon the Commissioner and State Board of Education to monitor, evaluate and supervise a local school district's management of its public schools. N.J.S.A. 18A:4-10; N.J.S.A. 18A:4-23; N.J.S.A. 18A:7A-10 to -16; N.J.S.A. 18A:7F-4; see Robinson v. Cahill, 69 N.J. 449, 458-61, 355 A.2d 129 (1976).[5] Within this statutory plan for the management and operation of the public schools, DYFS' authority is limited to the investigation of any allegation of child abuse or neglect against a school employee and notification to "the school district and the employee of its findings." N.J.S.A. 18A:6-7a. Therefore, the school laws do not confer authority upon DYFS to order a school district to take corrective action or submit a plan for remedial action in response to DYFS' investigatory findings.
In its appellate brief, DYFS acknowledges that once it completes an investigation of a child abuse complaint against a teacher, "[DYFS] has no statutory role to play aside from recommending remedial action to be taken by the facility." DYFS also acknowledges that "appellants' employer, the Newark School District, has the responsibility for evaluating the results of the Division's investigations and determining whether to accept the Division's recommendation, if any, as to possible remedial action to ensure that further harm to the children under the teachers' care would not result."
Although DYFS's brief accurately describes its statutory role with respect to a child abuse allegation against a teacher, DYFS' transmittals of its investigatory findings to the Newark school district at least implied that the district was required to take remedial action in accordance with DYFS' findings and recommendations. In *469 each case DYFS made investigatory findings concerning the teacher's conduct which, although not rising to the level of child abuse within the intent of N.J.S.A. 9:6-8.21, reflected adversely upon the teacher's qualifications and in several instances clearly indicated the appropriateness of disciplinary action. In most of the letters reporting its findings and recommendations, DYFS concluded by stating: "It is recommended that the Newark Public School district take and document appropriate corrective action." The letters also stated: "Please respond in writing within 30 days to confirm action taken." Consequently, even though DYFS' conclusions concerning "appropriate corrective action" were described as recommendations, DYFS' directive to the school district to "confirm" its corrective action "in writing" at least implied that the district was required to act in accordance with DYFS' recommendations, rather than to exercise its own independent judgment in deciding what action, if any, to take.
Moreover, this implication was made explicit when the school district failed to submit a remedial plan within 30 days. A DYFS employee with the title "Corrective Action Coordinator" sent a letter to the principal of the school where appellant Z.M. taught, entitled "Overdue Corrective Action Response," which stated:
This is your last reminder to send documentation on the above incident so that it may be closed.
I informed you recently that if it was not received within two weeks, we may have to initiate an investigation or advise the licensing and/or regulatory agency of your lack of cooperation.

N.J.S.A. 9:6-3.1(d) mandates that if an institution does not formulate or implement a remedial plan or make changes requested by the division, the division may recommend to the authority which licenses, oversees, approves or authorizes the operation of the institution that appropriate sanctions or actions be enforced or taken against the institution.
I must notify your licensing and/or regulatory agency if I do not receive your documentation with the next 5 days.

Please send it immediately to the above address, identified with the IAIU number.
In this letter and several other letters DYFS sent to the Newark school district, it cited N.J.S.A. 9:6-3.1 as authority for ordering a school to "formulate or implement a remedial plan or make changes requested by [DYFS]." However, N.J.S.A. 9:6-3.1 is clearly inapplicable to the investigatory reports involved in these appeals. This statute authorizes DYFS to request the chief administrator of an institution "[to] formulate a plan of remedial action" or "[to] make administrative, personnel or structural changes" under the circumstances set forth in N.J.S.A. 9:6-3.1(b) and (c). In addition, N.J.S.A. 9:6-3.1(d) provides that "[i]f a chief administrator of an institution does not formulate or implement a remedial plan or make any changes requested by the division, the division may recommend to the authority which licenses, oversees, approves or authorizes the operation of the institution that appropriate sanctions or actions be enforced or taken against the institution." However, these provisions only apply if an act of child abuse or neglect is committed by a teacher or other staff person at "an institution," N.J.S.A. 9:6-3.1(a); and N.J.S.A. 9:6-8.21 (g) defines "institution" to mean "a public or private facility in the State which provides children with out of home care, supervision or maintenance," which "includes, but is not limited to, correctional facility, detention facility, treatment facility, day care center, residential school, shelter and hospital." This definition of "institution" does not include a "day school," which N.J.S.A. 9:6-8.21(h) defines as "a public or private school which provides general or special educational services to day students in grades kindergarten *470 through 12." See N.J.S.A. 9:6-8.21(c).[6] Because a public school is a "day school" rather than an "institution," N.J.S.A. 9:6-3.1 does not confer authority upon DYFS to order a public school district to take specific corrective action or submit a remedial plan.[7]
Since the investigatory findings involved in these appeals were all transmitted to the Newark school district at least a year and a half ago, and the district has already taken disciplinary or other personnel actions against appellants based on DYFS's findings and recommendations, it is unclear whether appellants can be granted any effective relief at this time. However, we conclude that DYFS should be required to notify the Newark school district that DYFS' reports concerning the child abuse allegations against appellants did not require the district to take any disciplinary or other personnel actions but were investigatory findings and recommendations only, and that the district has the responsibility to make an independent judgment as to whether to accept DYFS' findings and recommendations. The district can then decide whether it would be appropriate to reconsider any of the disciplinary or other personnel actions which it has taken on the basis of DYFS' reports.[8]

III
Appellants argue that under the due process clauses of the Fourteenth Amendment to the United States Constitution and the New Jersey Constitution, U.S. Const. amend. XIV, § 1; N.J. Const. art. I, ¶1, DYFS was required to afford them an opportunity for an evidentiary hearing before transmitting its findings and recommendations to the school district. Appellants characterize DYFS' findings as "adjudicatory" because they directly resulted in the Newark school district initiating disciplinary and other personnel actions which adversely affected their employment rights. These personnel actions included transfers to other schools, withholding of salary increments and terminations of employment. In the remaining cases, the district directed the teachers to attend training courses and/or undergo counseling.
Initially, we note that insofar as appellants' arguments rest on the premise that DYFS required the Newark school district to take disciplinary or other personnel actions against them, we have held in section II of this opinion that DYFS does not have the statutory authority to order a school district to take any specific corrective action. The district has the sole authority to determine whether to initiate disciplinary proceedings or take other personnel action which may affect a teacher's employment rights. Any recommendations DYFS may make to the district are advisory only.
*471 In Blackacre Academy, supra, we held that DYFS, through the Institutional Abuse Investigation Unit (IAIU), may investigate child abuse allegations and transmit investigatory findings and recommendations to another government agency without conducting an evidentiary hearing. 304 N.J.Super. at 181-88, 698 A.2d 1275. In that case, DYFS sent a report to the Department of Education which found that child abuse allegations against a private day school and its primary owner and principal had been "substantiated" and recommended that the Department "thoroughly evaluate" those findings and "take such actions as necessary to address [DYFS'] concerns." Id. at 173, 698 A.2d 1275. In concluding that DYFS was not required to conduct a hearing before transmitting the results of its investigation to the Department, we stated:
[T]he "due process" requirements which govern the proceedings of an agency that makes binding legal determinations directly affecting legal rights do not apply to agency proceedings which are purely investigatory in nature.
The IAIU's transmittal to the Department of Education of a report describing the results of its investigation of allegations of child abuse at Blackacre Academy did not implicate any liberty or property interest which would entitle appellants to the due process protections required in adjudicatory proceedings. The IAIU's report does not purport to be an adjudication which would be binding upon the Department of Education; the purely investigatory nature of the IAIU's findings is clearly indicated by the report's final sentence which "recommend[s]" that the "Department of Education thoroughly evaluate the Blackacre Academy with regard to the various findings of this investigation and take such actions as necessary to address the concerns raised regarding Dr. Doe's actions, staff's actions, training, and suspensions." Moreover, before the Department could suspend or revoke appellants' licenses or order them to take remedial action, it would be required to conduct an evidentiary hearing in conformity with the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15. Thus, the IAIU's transmittal of its investigatory report to the Department of Education is analogous to a local police department forwarding an incident report to the county prosecutor. A target of an investigation by a local police department cannot directly challenge the adequacy or fairness of the investigation or the police department's decision to forward the matter to the county prosecutor. Instead, his rights are fully protected by the opportunity to move for an order quashing any indictment that may be returned and to defend against the charges before a jury. Similarly, appellants' due process rights would be fully protected by the opportunity for an evidentiary hearing before the Department before their licenses could be revoked or they could be ordered to take remedial action.
[Id. at 182-84, 698 A.2d 1275 (citations omitted).]
We reach the same conclusion in this case. If the Newark school district initiated action which adversely affected a teacher's statutorily protected employment rights, such as the withholding of a salary increment, N.J.S.A. 18A:29-14, or the termination of a tenured teacher's employment, N.J.S.A. 18A:28-5, the teacher would be entitled to an evidentiary hearing before an Administrative Law Judge (ALJ).[9] Moreover, the district could not simply rely upon DYFS' findings as the basis for such a personnel action; if the district wanted to present the evidence *472 upon which DYFS' investigatory findings were based, such as interviews of alleged victims or other witnesses, it would have to call any persons DYFS had interviewed as witnesses at the hearing. See State v. Lungsford, 167 N.J.Super. 296, 306-10, 400 A.2d 843 (App.Div.1979); see also Blackacre Academy, supra, 304 N.J.Super. at 183-84, 698 A.2d 1275; New Jersey Div. Youth & Family Servs. v. E.D., 233 N.J.Super. 401, 412-14, 558 A.2d 1377 (App.Div.), certif. denied, 118 N.J. 232, 570 A.2d 983 (1989). We are satisfied, as we were in Blackacre Academy, that the opportunity for such a hearing satisfies due process requirements.
Appellants point out that some of them were not afforded an opportunity for an evidentiary hearing to contest adverse employment actions taken by the Newark school district on the basis of DYFS' findings. For example, one appellant, a substitute teacher, was summarily terminated after the district received DYFS' findings and recommendations. However, a substitute or other untenured teacher has no statutory right to continued employment and thus no right to a hearing to contest a decision to terminate his or her employment. Battaglia v. Union County Welfare Bd., 88 N.J. 48, 56-58, 438 A.2d 530 (1981), cert. denied, 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982). The fact that a school district may make such a personnel decision based partly or wholly on DYFS' report of the results of a child abuse investigation, rather than solely on the basis of a school administrator's evaluation of the teacher's performance, does not create a right to a hearing. Indeed, appellants appear to concede that if the Newark school district itself conducted an internal investigation of child abuse allegations against a teacher who had no statutory right to continued employment, and its investigator submitted a report which the school administrators considered in deciding whether to recommend renewal of the teacher's employment contract, the teacher would have no right to a hearing to contest the report's findings and recommendations. We cannot perceive any good reason why a hearing should be required simply because another governmental agencyhere DYFShas submitted an investigatory report to the district rather than the district itself conducting the investigation.
Appellants also argue that they are entitled to an evidentiary hearing because DYFS damaged their professional reputations by notifying parents and guardians of the alleged abused students and the Newark school district of its investigatory findings. However, we rejected substantially the same argument in Blackacre Academy, supra, 304 N.J.Super. at 184-85, 698 A.2d 1275. Although the New Jersey Constitution extends due process protection to personal reputation, "without requiring any other tangible loss," Doe v. Poritz, 142 N.J. 1, 104, 662 A.2d 367 (1995), this does not mean that a liberty interest is implicated anytime a governmental agency transmits information that may impugn a person's reputation. DYFS' transmittals of investigatory findings to the parents and guardians of alleged abused students and the school district constituted a significantly more limited dissemination of adverse information than the notifications concerning the presence of Tier II and III sex offenders in a community which the Court in Doe found to require due process protections. 142 N.J. at 103-07, 662 A.2d 367. Moreover, a finding that child abuse allegations have not been substantiated but that DYFS has nevertheless expressed "concerns" about a person's conduct is intrinsically less damaging to reputation than a finding that child abuse charges have been "substantiated" or that a person is a convicted sex offender. Therefore, DYFS' limited dissemination of the results of its investigations did not cause the kind of damage to reputation which would entitle appellants to a hearing.
Finally, we note that a finding that child abuse allegations are "not substantiated" is not included in the "Central Registry." Compare N.J.A.C. 10:129A-3.4(c)(2) with *473 N.J.A.C. 10:129A-3.4(d). Consequently, such a finding is not made available to the various categories of parties listed in N.J.S.A. 9:6-8.10a(b). For this reason, the present case is distinguishable from M.R., supra, 314 N.J.Super. at 409-13, 420-26, 715 A.2d 308 and East Park High Sch., supra, 314 N.J.Super. at 159-66, 714 A.2d 339, which held that inclusion of a finding of substantiated child abuse in the Central Registry has such serious adverse effects upon a person's employment opportunities in the child care field and the right to become a foster or adoptive parent that an opportunity for an evidentiary hearing must be afforded to challenge such a finding. Therefore, we conclude that an investigative finding that child abuse allegations were "not substantiated" does not have a sufficiently direct and substantial impact upon employment or familial relationships to "entitle appellants to the due process protections required in adjudicatory proceedings." Blackacre Academy, supra, 304 N.J.Super. at 183, 698 A.2d 1275; see Hodge v. Jones, 31 F.M3d 157, 165-67 (4th Cir.), cert. denied 513 U.S. 1018, 115 S.Ct. 581, 130 L.Ed.2d 496 (1994) (confidential "unsubstantiated" and "ruled out" findings in Maryland's confidential child abuse registry do not impinge on protectable privacy or property interests).
Accordingly, we direct DYFS to notify the Newark school district that DYFS' reports concerning the results of its investigations of the child abuse allegations against appellants do not require the district to take any specific disciplinary or other personnel actions. Subject to this clarification, we reject appellants' challenges to DYFS' reports and recommendations. Affirmed.
NOTES
[1] As in In re Allegations of Physical Abuse at Blackacre Academy, 304 N.J.Super. 168, 168 n. 1, 698 A.2d 1275 (App.Div.1997) and In re Allegations of Sexual Abuse at East Park High Sch., 314 N.J.Super. 149, 149 n. 1, 714 A.2d 339 (App.Div.1998), we have used fictitious names to refer to the particular schools involved in the appeal. See N.J.S.A. 9:6-8.10a.
[2] A dispositional conference is an informal hearing. See New Jersey Div. of Youth & Family Servs. v. M.R., 314 N.J.Super. 390, 397-99, 715 A.2d 308 (App.Div.1998).
[3] The Central Registry is a centralized data bank containing reports of substantiated findings of child abuse. N.J.S.A. 9:6-8.11. These findings are confidential, N.J.S.A. 9:6-8.40, but may be disclosed to various interested parties in accordance with N.J.S.A. 9:6-8.10a and N.J.S.A. 30:5B-25.3. See M.R., supra, 314 N.J.Super. at 399-402, 715 A.2d 308; East Park High Sch., supra, 314 N.J.Super. at 156-59, 714 A.2d 339.
[4] DYFS' findings were expressed in varying language in the fourteen cases; in some it found the allegations "unsubstantiated with concerns" and in others "not substantiated" but with "concerns." DYFS informs us that these dispositions all constituted findings that the child abuse allegations were "not substantiated," as that term is defined in N.J.A.C. 10:129A-3.3(a)(2).
[5] If the State Board concludes that a local board is not providing a thorough and efficient system of education, it may issue an administrative order creating a State-operated school district. N.J.S.A. 18A:7A-15. When DYFS made the investigatory findings challenged in this appeal, the Newark public schools were being managed by a State-operated district. See Contini v. Board of Educ. of Newark, 286 N.J.Super. 106, 668 A.2d 434 (App.Div.1995), certif. denied, 145 N.J. 372, 678 A.2d 713 (1996).
[6] The present version of N.J.S.A. 9:6-8.21(c),(g) and (h) reflects amendments to these sections which were enacted in 1987. L.1987, c. 341. In response to the Department of Education's objections, Governor Kean conditionally vetoed the original form of these amendments partly on the ground that they treated "day schools" as "institutions." Governor's Veto Message to Assembly Bill No. 2575, at 2 (November 23, 1987). His veto message specifically recommended that "day schools" be excluded from the definition of "institution" and proposed the enactment of N.J.S.A. 9:6-8.21(h) defining "day school." Id. at 6. Therefore, the exclusion of "day schools" from the regulatory provisions relating to "institutions" was a direct legislative response to the concerns expressed in the Governor's veto message.
[7] Even if N.J.S.A. 9:6-3.1 were applicable to a public school, this statute authorizes DYFS to require a plan of remedial action or administrative, personnel or structural changes only if it finds that an act or acts of child abuse have been committed, and in these cases, DYFS found that the child abuse allegations were "not substantiated."
[8] Appellants' counsel informed us at oral argument that the school district refused to grieve any of the personnel actions taken against appellants on the ground that those actions were mandated by DYFS' reports. Unless those grievances have been mooted, appellants may seek to pursue them at this time.
[9] In fact, after the Newark school district withheld the salary increment of one appellant, apparently based in part on DYFS' investigatory report, the teacher appealed the decision to the Department of Education, and an ALJ reversed the district's decision based on evidence presented at an evidentiary hearing.