871 A.2d 699 (2005)
377 N.J. Super. 59
DIVISION OF YOUTH AND FAMILY SERVICES, Petitioner-Respondent,
v.
D.F., Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 19, 2004.
Decided April 22, 2005.
*700 Patrick T. Cronin, Northfield, argued the cause for appellant (Agre and Cronin, attorneys; Mr. Cronin, of counsel and on the brief).
James Gentile, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Michael Haas, Deputy Attorney General, of counsel; Cory Cassar, Deputy Attorney General, on the brief).
Before Judges SKILLMAN, COLLESTER and PARRILLO.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
In our recent decision in New Jersey Division of Youth and Family Services v. S.S., 372 N.J.Super. 13, 855 A.2d 8 (App.Div. 2004), certif. denied, 182 N.J. 426 (2005), we considered whether the Division of Youth and Family Services (DYFS) had established a charge of child abuse or neglect against a mother who allegedly took inadequate measures to shield her child from the effect of acts of domestic violence committed upon her by the child's father. This appeal involves a similar issue in a situation where the father's acts of domestic violence caused no harm to the child and DYFS did not perceive a sufficient threat to the child to warrant the filing of a protective services action. Instead, the only action taken by DYFS was to place the mother's name in the Central Registry of persons who have been identified as committing acts of child abuse or neglect. We conclude that DYFS failed to establish that the mother committed an act of abuse or neglect that warranted this administrative action.
On October 23, 2001, DYFS sent a notice to appellant that it had conducted an investigation that "substantiated" a report that she had "neglected" her son, J.A.D., who was then six months old, and that her name had been placed in a Central Registry of persons who have committed acts of child abuse or neglect. The notice did not set forth the factual basis for this determination. The notice informed appellant that DYFS would disseminate its finding to law enforcement agencies and, upon request, any child care agency with which appellant was employed or sought employment:

N.J.S.A. 9:6-8.10a authorizes the Division to identify perpetrators of child abuse or neglect to agencies, persons or entities who are mandated by statute to consider such information when conducting background screenings of employees, prospective employees, or volunteers who provide or seek to provide services to children. For certain employment, a substantiation of child abuse or neglect will result in automatic elimination from employment consideration.
*701 On October 29, 2001, appellant sent a letter to DYFS, through counsel, appealing this determination and seeking a contested case hearing. On July 29, 2002, DYFS transmitted the matter to the Office of Administrative Law (OAL).
On March 13, 2003, appellant filed a motion with the OAL seeking "an order enjoining [DYFS] from including Appellant's name on the Central Registry of Abuse/Neglect Perpetrators." In support of this motion, appellant filed a "statement of uncontested facts" that set forth her understanding of the purported factual basis of DYFS' determination that she had neglected J.A.D.:
1. On October 12, 2001, at approximately 8:15 p.m., Appellant and [J.D.] ("the Assailant") were in front of Appellant's home ...
2. Appellant was carrying her six-month old son, [J.A.D.] in a baby carrier.
3. Appellant and the Assailant were engaged in a verbal argument.
4. The Assailant attempted to take the baby from Appellant's possession and Appellant refused to let go of the carrier.
5. The Assailant struck Appellant in the jaw.
6. Appellant fell to the ground losing her grip on the baby carrier.
7. After the Assailant struck Appellant, he fled without the child.
8. The child was uninjured during the incident.
9. Appellant required medical treatment for a fractured jaw.
10. The Assailant was subsequently charged with assault, pled guilty and has been sentenced.
11. Appellant sought and secured a final restraining order under the New Jersey Domestic Violence Statute.
DYFS filed a cross-motion for a "summary decision" upholding its determination that appellant had neglected J.A.D. In support of its cross-motion, DYFS submitted notes and reports of DYFS caseworkers which indicated that appellant had filed prior domestic violence complaints against J.A.D.'s father, J.D., alleging various acts of domestic violence. In one of the complaints, appellant alleged that J.D. had punched, slapped and assaulted her many times and in one instance threatened to kill her while brandishing a kitchen knife. Appellant eventually dismissed this complaint, referring to it as a misunderstanding.
DYFS's papers also included a report by a psychologist who evaluated appellant, which stated in part:
[Appellant] is an intelligent and competent individual in her professional life, but she has been a poor manager and has exhibited poor judgment in the emotional domain.
... She clearly feels protective of her daughter and son. She seems to feel that she is in better control and that she will not allow herself to be manipulated again. I am not certain that this is quite true as she could list [J.D.'s] many problems that could possibly cause many individuals to have second thoughts about maintaining a relationship with this man.
DYFS did not dispute appellant's account of the October 12, 2001 assault by J.D., upon which the agency based its determination that appellant had neglected J.A.D. However, DYFS argued in a brief in support of its motion that appellant had neglected J.A.D. by failing to take adequate steps to protect herself, J.A.D. and the child of her former marriage from J.D.'s acts of domestic violence:

*702 The uncontradicted evidence indicates by more than a preponderance that [appellant] was aware of the inherent dangers in permitting contact between herself and J.D. and more importantly in placing her children in the path of this danger. Upon noticing the danger, [appellant] failed to mitigate those dangers to protect J.A.D. from exposure to domestic violence by merely obtaining and maintaining a restraining order or in the alternative preventing contact between the children and J.D. until protective provisions were put in place. To the contrary, [appellant] lived with J.D. and the children after she filed and dismissed one restraining order against him and after she discussed J.D.'s violent temper and his failure to obtain counseling with the Division and after the Division recommended she obtain another restraining order.
The Administrative Law Judge (ALJ) to whom the case was assigned concluded that DYFS's determination that appellant had neglected her child was not justified and that her name should not have been placed in the Central Registry:
The question here is whether the incident of October 12, 2001 in context, supports the finding that [appellant] failed to exercise a minimum degree of care for J.A.D. within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b)....
... [DYFS] reasons that [appellant] could have exercised a minimum degree of care by obtaining and enforcing restraining orders against J.D., and she has a history of mishandling this available tool....
The argument opens the possibility that women with children will be placed on the Central Registry when they do not act affirmatively to end abusive relationships.... [DYFS] points out that under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-18, the Legislature has already found that domestic violence leaves lasting emotional marks upon children even when they are not physically harmed. That finding was, however, meant to bolster the position of abused spouses and there is no indication that the Legislature would countenance its application to a theory of abused spouse responsibility for purposes of the Central Registry.
The Director of DYFS rejected this recommended decision and concluded that the papers submitted on appellant's and DYFS's cross-motions established that appellant had neglected J.A.D. and that her name should be placed in the Central Registry. In reaching this conclusion, the Director relied primarily on the caseworker notes and domestic violence complaints DYFS had submitted in support of its cross-motion for summary decision:
The facts supported by the record indicate that although J.A.D. was not injured, he was placed at significant risk of substantial harm due to [appellant's] failure to exercise a minimum degree of care in her supervision of J.A.D.... [Appellant] reported to multiple parties including the police, the Division, and Dr. Richter, that [J.D.] was a dangerous man with an untreated violent temper. As a six month old child, J.A.D. had no capacity to protect himself. Even though [appellant] knew the dangers, she continued to unnecessarily expose her child to [J.D.].
Based on this conclusion, the Director sustained DYFS's action in placing appellant's name in the Central Registry. We reverse.
When DYFS receives information concerning alleged child abuse or neglect, it is authorized to take both administrative and judicial action. Under N.J.S.A. 9:6-8.11, DYFS is required to forward any report of *703 child abuse or neglect to the Central Registry within seventy-two hours. Upon receipt of such a report, DYFS is required under regulations adopted to implement N.J.S.A. 9:6-8.11 to evaluate available information to determine whether that allegation is "substantiated" or "unfounded." N.J.A.C. 10:129A-3.3(a);[1] see In re Allegation of Physical Abuse concerning L.R., 321 N.J.Super. 444, 449-50, 729 A.2d 463 (App.Div.1999).
If DYFS finds based on its internal investigation that a charge of child abuse or neglect has been "substantiated," any person whose name is placed in the Central Registry is entitled to a trial-type hearing to challenge this finding.[2]See In re Allegations of Sexual Abuse at E. Park High Sch., 314 N.J.Super. 149, 159-66, 714 A.2d 339 (App.Div.1998); N.J. Div. of Youth & Family Servs. v. M.R., 314 N.J.Super. 390, 715 A.2d 308 (App.Div.1998). Such a hearing is conducted before the OAL as a "contested case" hearing under N.J.S.A. 52:14B-9 and N.J.A.C. 1:1-1.1 to 20.3. If the finding of child abuse or neglect is upheld, the person's name *704 remains in the Central Registry. But if the administrative hearing results in a determination that the child abuse or neglect charge has not been substantiated, the person's name must be immediately removed from the Central Registry. See S.S., supra, 372 N.J.Super. at 28, 855 A.2d 8; East Park High Sch., supra, 314 N.J.Super. at 168, 714 A.2d 339.
N.J.S.A. 9:6-8.10a provides that "all reports of findings forwarded to the child abuse registry pursuant to [N.J.S.A. 9:6-8.11] shall be kept confidential." However, N.J.S.A. 9:6-8.10a requires DYFS to disclose information in the Central Registry to various parties, including "[a] family day care sponsoring organization for the purpose of providing information on child abuse or neglect allegations involving prospective or current providers [,]" N.J.S.A. 9:6-8.10a(10), "[a]ny person or entity mandated by statute to consider child abuse or neglect information when conducting a background check or employment-related screening of an individual employed by or seeking employment with an agency or organization providing services to children [,]" N.J.S.A. 9:6-8.10a(13), and "[a]ny person or entity conducting a disciplinary, administrative or judicial proceeding to determine terms of employment or continued employment of an officer, employee, or volunteer with an agency or organization providing services for children[,]" N.J.S.A. 9:6-8.10a(14). See M.R., supra, 314 N.J.Super. at 399-401, 715 A.2d 308; E. Park High Sch., supra, 314 N.J.Super. at 154-57, 714 A.2d 339.
We have recognized that the scope of "[p]ermissible disclosure of names contained in the Central Registry ... is ... extensive." S.S., supra, 372 N.J.Super. at 27, 855 A.2d 8. Consequently, such disclosure "not only injure [s] [a person's] good name" but also significantly limits that person's "capacity to obtain employment in a vast array of education-related jobs." E. Park High Sch., supra, 314 N.J.Super. at 163, 714 A.2d 339. Indeed, prospective child care employers are required to determine whether a prospective employee's name is included in the Central Registry and "are prohibited from employing [a person included in the registry] at the risk of loss of licensure." Ibid.
Although the inclusion of a person's name in the Central Registry through DYFS's administrative procedures provides notice to a variety of parties, including employers and prospective employers in child care-related fields, that a person has been identified as a child abuser, those procedures do not afford any direct protection to a child who has been found to have been abused or neglected by a parent or guardian. The only consequence of DYFS's pursuit of this administrative process is inclusion of the name of the purported child abuser in the Central Registry.
The only means by which DYFS may provide protection to an abused or neglected child is by filing a protective services complaint in the Family Part of the Chancery Division pursuant to N.J.S.A. 9:6-8.21 to -8.73. The objective of such an action is "the immediate protection of" the abused or neglected child. N.J.S.A. 9:6-8.22. In a protective services action, the court may enter a "preliminary order of protection," N.J.S.A. 9:6-8.31(c), under which a parent or other guardian who is alleged to have abused or neglected a child may be required to comply with "reasonable conditions of behavior," N.J.S.A. 9:6-8.55. These conditions may include mandates that the alleged abuser "stay away from the home, the other spouse or the child," N.J.S.A. 9:6-8.55(a), "abstain from offensive conduct against the child or against the other parent," N.J.S.A. 9:6-8.55(c), and "refrain from acts of commission or omission *705 that tend to make the home not a proper place for the child," N.J.S.A. 9:6-8.55(e). In addition, if DYFS does not believe that the alleged abused or neglected child will be adequately protected by the imposition of such conditions, it may seek removal of the child from the home pursuant to the procedures set forth in N.J.S.A. 9:6-8.27 to -8.33.
In this case, the only action taken by DYFS with respect to appellant's alleged neglect of J.A.D. was the October 23, 2001 notice that appellant's name had been placed in the Central Registry. DYFS did not file a protective services complaint or, as far as the record before us reveals, take any other action to safeguard J.A.D. from the effects of appellant's alleged neglect, presumably because DYFS concluded that J.A.D. would be adequately protected by a domestic violence restraining order that appellant obtained against J.D. on October 18, 2001. Indeed, when DYFS filed a motion with the OAL for a summary decision affirming its investigatory finding a year and a half later, it relied solely on domestic violence complaints that appellant had filed prior to the October 12, 2001 incident in which J.D. broke her jaw, a psychological evaluation of appellant and notes of DYFS caseworkers that indicated appellant had not taken effective steps to protect herself from J.D.'s violent acts prior to that incident. DYFS did not submit any factual material that indicated it had received additional information regarding appellant's care of J.A.D. after October 12, 2001, or that it even had any further contact with appellant after notifying her that her name had been placed in the Central Registry.
We now turn to whether that administrative action was warranted under the circumstances of this case. We recently considered a finding by DYFS of substantiated child abuse by a mother in circumstances similar to this case in S.S., supra, 372 N.J.Super. 13, 855 A.2d 8. After leaving home with her twenty-one-month-old son because her husband had placed his hands around her neck when he discovered his dinner was not ready, the mother returned twenty minutes later with the child because she believed her husband would have calmed down by then. Id. at 15-16, 855 A.2d 8. However, the husband was still angry, and after the mother attempted to retreat to a bedroom with the child, her husband violently choked her and pulled her hair. Id. at 16, 855 A.2d 8. She then fled the house, and while she was outside attempting to call the police on a cell phone, with her son at her side, her husband punched her in the back of the head. Ibid. The child was not injured in the assault upon the mother. Ibid. Criminal charges were brought, and the husband was incarcerated but subsequently released on bail. Id. at 17, 855 A.2d 8. The local police then referred the matter to DYFS. Ibid. A DYFS caseworker suggested that appellant obtain a restraining order against her husband, but she allegedly refused. Ibid. When the caseworker learned that the mother had inquired about the possibility of her husband returning home for the weekend, she initiated steps to remove the child from the mother's care, which resulted in temporary custody of the child being awarded to DYFS. Id. at 18-19, 855 A.2d 8. After a trial, the trial court found that the mother's actions after her husband assaulted her constituted abuse of her child within the intent of N.J.S.A. 9:6-8.21c(4)(b). Id. at 21, 855 A.2d 8. Although the protective service order entered on the basis of this finding was subsequently dismissed and custody of the child returned to the mother, the mother's name was entered and retained in the Central Registry based on the administrative and judicial findings that she had abused the child. Ibid.
*706 On appeal, Judge Payne's opinion for this court noted that "the focus [in a child abuse or neglect case] must center upon the question of whether the parent under consideration caused injury to the child and, if not, whether that parent is likely to do so in the future." Id. at 24, 855 A.2d 8. The opinion also indicated that there is "no reason, when judging the likelihood of future harm, that the court focus solely on events at the time of removal if causes for concern have been significantly alleviated." Ibid. Evaluating the evidence presented in S.S. in light of these standards, the opinion concluded that "DYFS never met its initial burden of demonstrating harm to [the] child, as contrasted to harm to [the mother], arising from the domestic violence that had occurred." Id. at 25, 855 A.2d 8. Significant to this appeal, Judge Payne also questioned the appropriateness of inclusion of the mother's name in the Central Registry when the only allegation against her was that she had failed to take effective steps to remove her husband from the home before he committed additional acts of domestic violence:
We note as well that, in the circumstances of this case, it makes little practical sense to include appellant's name in the Central Registry. There is no evidence whatsoever that she is a danger to children in general. Indeed, evidence suggests that she is well suited to the child care that has been central to her life. We assume that such is the case with most or all battered women whose names are included in the Registry because their children witnessed domestic violence the recurrence of which the women were physically, economically or psychologically incapable of preventing, and we question why such women should ever be included therein. Indeed, the potential for inclusion in the Registry may serve as a disincentive to mothers who would otherwise report instances of domestic violence to the police.
[Id. at 27-28, 855 A.2d 8.]
The basis for DYFS pursuing a claim of child neglect against appellant is even weaker in this case than in S.S. Although DYFS filed a protective services complaint in S.S. and removed the child from the home, which our opinion suggested had been warranted, id. at 23, 855 A.2d 8, DYFS did not seek removal of J.A.D. from appellant's home or even offer her any form of protective services. It only placed her name in the Central Registry. Moreover, it took this action based on a domestic violence incident in which J.D. broke appellant's jaw but did not cause any harm to J.A.D. The caseworkers' notes and domestic violence complaints that DYFS submitted to the ALJ indicated that J.D. had committed acts of domestic violence against appellant before the October 12, 2001 incident, but there is no indication J.A.D. was harmed on any of those occasions or that the circumstances of those incidents should have alerted appellant to the possibility that J.D. posed a risk of harm to J.A.D. In fact, the caseworkers' notes do not indicate that J.A.D. was even present when those prior acts of domestic violence were committed. Furthermore, appellant obtained a final restraining order against J.D. on October 18, 2001, only six days after the October 12, 2001 domestic violence incident, which was presumably the reason DYFS perceived no need to bring a protective services action against appellant or J.D.
Moreover, even if the record supported DYFS's finding that appellant neglected J.A.D. by not filing a domestic violence complaint against J.D. after one of the prior domestic violence incidents, there was no rational basis for DYFS to pursue the matter solely by an administrative action to place appellant's name in the Central *707 Registry. The psychologist who evaluated appellant on behalf of DYFS concluded that she is an "intelligent and competent individual in her professional life" as a critical care nurse in a hospital. Therefore, there was no factual foundation for DYFS's conclusion that appellant's alleged failure to adequately address her own domestic violence situation demonstrated a need to identify her as a child abuser in a record that can be accessed by employers and prospective employers in the child care field. See S.S., supra, 372 N.J.Super. at 27-28, 855 A.2d 8.
Accordingly, we reverse DYFS's final decision that appellant neglected her child and direct that her name be removed from the Central Registry.
NOTES
[1] We note that this regulation was recently amended to eliminate the investigatory finding of "not substantiated" formerly allowed under the regulation. 37 N.J.R. 282(a) (January 18, 2005).
[2] At oral argument, it was revealed that a person's name may be placed in the Central Registry based solely on an individual caseworker's determination that allegations of child abuse or neglect have been substantiated. After oral argument, DYFS submitted a supplemental certification by Ann Gunning, a "Supervising Program Support Specialist in [DYFS's] Office of Intergovernmental Affairs," regarding DYFS's administration of the Central Registry. This certification indicates that if a person contests the inclusion of his or her name in the Registry, DYFS takes the following administrative action:

6. The Administrative Review Officers have been instructed to advise the Office of Information Systems to enter a numeric code "10" into the Dispositional Field in the S.I.S. computer files for the case. This code indicates that the "Code 5" finding is under a pending administrative review. If the Administrative Review Officer upholds the initial findings of substantiation, and the individual appeals the matter, the Administrative Review Officer transfers the matter to the Administrative Hearings Coordinator in [DYFS's] Office of Intergovernmental Affairs. The Administrative Hearings Coordinator causes the Office of Information Systems to enter a numeric code "11" into the Dispositional Field in the S.I.S. computer files for the case. This code indicates that an appeal is pending before an Administrative Law Judge.
7. If, during the pendency of these appeals, a request for Child Abuse Record Information is made to [DYFS] because the individual is seeking to become a licensed day care provider, to work with children in a children's residential treatment center, to have their home approved by the Division of Family Development, or to become an adoptive parent through a private adoption agency, [DYFS's] substantiation will not be released to the inquiring agency. Rather, that agency will be advised by the unit completing the Child Abuse Record Information check that their request for Child Abuse Record Information is pending.
We are troubled by the fact that a person's name may be placed in the Central Registry based solely on a determination by an individual caseworker, particularly in view of the time and effort involved in challenging such a determination. We are also concerned that a sophisticated agency which is informed that its "request for Child Abuse Record Information is pending" may infer that this means the person about whom it has inquired has been identified as a child abuser. However, because this case comes before us on an appeal from a final decision of DYFS, these issues regarding the interim stages of a child abuse or neglect proceeding before DYFS are not directly before us. Moreover, those issues have not been adequately briefed. Therefore, we simply note that DYFS's procedures regarding the initial placement and maintenance of names in the Central Registry raise issues of procedural due process and administrative fairness that merit further attention. See Doe v. Poritz, 142 N.J. 1, 99-109, 662 A.2d 367 (1995).