# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0586-15T4

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

V.E.,

    Defendant-Appellant.

_____

IN THE MATTER OF R.S., a minor.

_____

APPROVED FOR PUBLICATION

February 1, 2017

APPELLATE DIVISION

Argued December 1, 2016 - Decided  February 1, 2017

Before Judges Lihotz, Hoffman and Whipple.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Bergen
County, Docket No. FN-02-179-15.

Deric Wu, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E.
Krakora, Public Defender, attorney; Mr. Wu,
on the brief).

Christian A. Arnold, Assistant Attorney
General, argued the cause for respondent
(Christopher S. Porrino, Attorney General,
attorney; Andrea M. Silkowitz, Assistant
Attorney General, of counsel; Jill N.
Stephens-Flores, Deputy Attorney General, on
the brief).

Noel C. Devlin, Assistant Deputy Public Defender, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Mr. Devlin, on the brief).

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

Defendant V.E., the mother of R.S. now age nine, challenges an order dismissing a Title 9 action filed by plaintiff the New Jersey Division of Child Protection and Permanency (Division), prior to an evidentiary hearing. The Division issued an administrative "established" finding of abuse or neglect against V.E., who was not afforded an administrative hearing to challenge the determination.[1] She sought to contest the Division's finding before the Superior Court in this matter. However, over V.E.'s objection, the Family Part judge granted the Division's motion to dismiss the Title 9 litigation.

On appeal, V.E. argues due process and fundamental fairness mandate she be granted an evidentiary hearing to contest the Division's finding child neglect was "established." She maintains the court erred when it dismissed the Title 9 action without considering her challenge to the finding.

---

[1] The action also involved A.S., the child's father. However, he has not appealed and therefore we limit our discussion to V.E.'s challenges.

Following our review, we conclude the court did not abuse its discretion in dismissing the Title 9 action. However, because an established finding is a finding of child abuse or neglect under N.J.S.A. 9:6-8.21(c)(4), subject to disclosure as permitted by N.J.S.A. 9:6-8.11a(b) and other statutes, due process considerations require a party against whom abuse or neglect is established be afforded plenary administrative review. The agency's denial of an administrative hearing is reversed.

I.

At the time of the Division's involvement, A.S., V.E. and R.S. resided on the first floor of a two-family home located in Hackensack. The residence was owned by A.S., who was V.E.'s partner and R.S.'s father. According to V.E., there were three families residing in the residence. In addition to her family, and a family living on the second floor, V.E. told police "[two] unknown Hispanic males in their 30s . . . live[d] in the basement."

On December 22, 2014, a kitchen grease fire erupted on the second floor of the dwelling. At the time, V.E. was in her apartment, A.S. was out of state working, and R.S. was attending an after-school program. When concerns arose regarding a possible gas leak, the fire department forcibly entered the

basement through a back door. While searching for the gas line, firemen forced open an inside basement door and discovered two rooms containing "a very large quantity of [c]annabis [p]lants."

A report authored by Officer Pedro Dominguez of the Hackensack Police Department stated when he reviewed the scene with the fire department, he "immediately smell[ed] the overwhelming odor of raw marijuana emanating in the back yard area of the home." Officer Dominguez described the basement's "sophisticated . . . growing operation," which included a makeshift irrigation system, fans, fluorescent lights, and heat lamps. The entire building was evacuated after the Hackensack Building Department condemned the structure because of the possible gas leak and an "unsafe overload of the electric panel."

Narcotics Detective Alexander Lopez-Arenas took over the criminal investigation. He noted the "entire home smelled like marijuana" and valued the growing operation at approximately $2,000,000.

V.E. was charged with child endangerment and various drug-related offenses. She was detained in the county jail. A.S. was not located; a warrant for his arrest was issued. The

Division exercised an emergency removal of R.S., who was placed with his Godmother.[2]

On December 26, 2014, the Division filed a verified complaint for custody to protect the best interests of R.S., pursuant to N.J.S.A. 9:6-8.21 and N.J.S.A. 30:4C-12. The court upheld the emergency removal and R.S.'s placement outside his home. The resultant order granted the Division legal and physical custody of the minor and contained provisions for supervised visitation, substance abuse evaluations, and random urine screenings for both parents.

On December 23, 2014, the Division's investigation commenced with V.E.'s interview. She denied knowledge of the growing operation and explained her basement access was limited to using the laundry room. Further, she asserted R.S. never entered the basement. V.E. insisted she knew nothing of drugs in her home and stated she was very confused by the police action.

_____

[2] The Division's removal of a child without a court order, commonly called a "Dodd removal," is authorized by the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82. "The Act was authored by former Senate President Frank J. 'Pat' Dodd in 1974[,]" for whom it was named. N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011) (quoting N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010)).

The Division later communicated with A.S. by cell phone. He reported a man named "Jose" rented the basement apartment. A.S. maintained he had not been in the basement "for over a year" and denied knowledge of drugs in his home. He insisted neither V.E. nor R.S. knew of the marijuana growing operation. Although A.S. stated he was returning to New Jersey that evening and would report to police, he did not do so and his exact whereabouts remained unknown.

The Division also spoke to R.S., who appeared "happy and talkative" during his interview. R.S. stated he lived with his parents, an adult sibling, and his grandparents. R.S. confirmed two of A.S.'s friends lived in the basement, and explained he only entered the laundry area with V.E. R.S.'s responses reflected he had no knowledge of drugs in the home and never saw plants in the basement.

The Division also (1) interviewed R.S.'s Godmother, her household members, and V.E.'s adult son, who attended college in Maine; (2) reviewed R.S.'s medical and school records; (3) considered police reports; and (4) viewed photographs of the crime scene depicting "multiple rooms in the basement of the home with hundreds of marijuana plants growing at different stages of development," "many haphazardly placed wires, lighting

system and an irrigation system throughout the basement" along with a security system with a video monitor.

Once completed, the Department of Children and Families (Department) "Investigation Summary" issued findings and concluded "substantial risk of injury and environmental neglect" was "established" against V.E. and A.S. Noting V.E. was incarcerated on charges of "possession of marijuana, maintaining/operating CDS production/facility, fortified structure for dispensing drugs, hindering apprehension [by uttering] false infor[mation], and endangering the welfare of a child," the Department stated R.S.

> was placed [at] a substantial risk of harm as the home [where] he was residing was condemned for illegal wiring which was used to conduct an elaborate, illegal marijuana growing operation complete with an irrigation system, security cameras and lighting.

The Division released this report to V.E.'s attorney during a February 19, 2015 case management hearing and informed the judge its investigation "established" neglect against both parents. The Division then proposed to dismiss the Title 9 complaint to proceed solely under Title 30. V.E. objected, arguing:

> [W]e are objecting to the Division's request for a dismissal of the Title 9, since we do want an opportunity for a fact finding, and we do want an opportunity to have the

7

> Division put forth their proofs, and indicate a specific reason and prove by a preponderance of the evidence that this child is an abused [or] . . . neglected child.

The judge denied V.E.'s request for a hearing, reasoning a hearing was not warranted since the Division was "not asking the court to make that finding" of abuse or neglect under Title 9. The judge further stated the "established" finding would not require either parents' name to be added to the central registry. She ordered the Title 9 action dismissed without prejudice. The litigation continued pursuant to N.J.S.A. 30:4C-12.

Thereafter, V.E. stipulated there was a need for continued services extended by the Division and waived her right to a summary hearing.[3] Physical custody of R.S. was returned to V.E., with the Division continuing care and supervision. On August 18, 2015, the court terminated the litigation. The final order stated it was safe for R.S. to return to the joint legal and physical custody of V.E. and A.S. This appeal followed.

---

[3] V.E. attended a psychological examination and all random urine screens were negative, obviating substance abuse treatment.

A.

Our review of a Family Part order is limited.  We give substantial deference to the Family Part's findings of fact, Cesare v. Cesare, 154 N.J. 394, 411-12 (1998), "when supported by adequate, substantial, credible evidence."  Finamore v. Aronson, 382 N.J. Super. 514, 519 (App. Div. 2006) (quoting Cesare, supra, 154 N.J. at 412).  Reversal is warranted if there is insufficient evidentiary support for the trial judge's findings, N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007), or if the stated findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484, (1974).  On the other hand, our review of a trial judge's legal conclusions remains de novo.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

B.

"The primary concern of all public agencies involved with abuse and neglect is to ensure the safety, well-being, and best interests of the child."  N.J.A.C. 3A:10-1.4.[4]    "Other

---

[4]    The Department of Children and Families has recodified certain regulations relevant to abuse and neglect (continued)

considerations, such as the objective of maintaining family integrity, promoting family functioning or the concern for traditional 'parental rights,' are secondary." Ibid.

Relevant to the instant appeal, the Legislature has defined an abused or neglected child as

> a child less than 18 years of age . . . whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

Not every harm or risk of harm is of such a serious nature to cause a child to become an abused or neglected child. Only

---

(continued)
investigations. See 49 N.J.R. 98(a) (January 3, 2017) ("The Department of Children and Families requested, and the Office of Administrative Law agreed to permit, the administrative recodification of the Department's rules from Title 10, Human Services, to the newly created Title 3A, Children and Families, of the New Jersey Administrative Code."). The Notice of Administrative Changes noted the recodified chapters and technical changes were effective January 3, 2017, but it was "anticipated that approximately two to four chapters will be recodified with each Code Update produced." Ibid. Where applicable we cite the recodified regulations. The Notice included a table, which set forth "the Title 10 chapters being recodified along with their chapter headings and new Title 3A codification." Ibid. For example, N.J.A.C. 3A:10-1.4 was formerly N.J.A.C. 10:129-7.7(a).

conduct that is "grossly or wantonly negligent" constitutes failure to "exercise a minimum degree of care" under N.J.S.A. 9:6-8.21(c)(4). L.A. v. N.J. Div. of Youth & Family Servs., 217 N.J. 311, 332 (2014). Thus, it is not inconsistent to find a child was placed at risk of harm and yet was not abused or neglected.

The Department oversees the Division and is charged with the prompt investigation of allegations of child abuse or neglect. N.J.S.A. 9:6-8.11.[5] See also N.J.A.C. 3A:10-2.1. "[The Department] has broad authority to investigate allegations of child abuse." In re L.R., 321 N.J. Super. 444, 449 (App. Div. 1999). The "grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities and . . . the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent." N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978).

After receiving a referral regarding possible child abuse or neglect, the Department follows the defined child protection investigation process, as authorized by N.J.S.A. 9:6-8.11 and promulgated regulations, N.J.A.C. 3A:10-7.3(b). The

---

[5] N.J.S.A. 9:6-8.11 designates the Division as the representative in the Department to investigate child abuse or neglect.

investigation is designed to assess and assure a child's health and safety, while the Division gathers evidence regarding the child's condition, obtains statements from the child, interviews alleged perpetrators or other witnesses, requests available police reports, and consults with medical and educational professionals.  N.J.A.C. 3A:10-2.4; N.J.A.C. 3A:10-3.1 to -3.3. The evidence specific to each allegation must be evaluated to determine whether abuse or neglect has occurred, making "every reasonable effort to identify the perpetrator for each allegation of abuse or neglect."  N.J.A.C. 3A:10-7.3(a).

The investigation must be completed and a report issued within seventy-two hours.  N.J.S.A. 9:6-8.11.  Once completed, the Department must "notify the alleged perpetrator and others of the outcome of its investigation."  Dep't of Children & Families v. D.B., 443 N.J. Super. 431, 441-42 (App. Div. 2015) (quoting In re Allegations of Sexual Abuse at E. Park High Sch., 314 N.J. Super. 149, 155 (App. Div. 1998)).

The statutory and regulatory framework also delineates the authorized actions with respect to any findings.  The Department, through the Division, may take both administrative and judicial action.  Div. of Youth & Family Servs. v. D.F., 377 N.J. Super. 59, 64 (App. Div. 2005).  Thus, concurrent review of the Division's findings of abuse or neglect may be undertaken.

When a child is removed from his or her home and when the Division concludes it must provide services to the abused or neglected child, which would also include services to aid the parents, its only recourse is to file a protective services complaint in the Family Part. N.J.S.A. 9:6-8.22. "The objective of such an action is 'the immediate protection of' the abused or neglected child." D.F., supra, 377 N.J. Super. at 67. In such a proceeding, the Division is obliged to prove the child was abused or neglected by "preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" P.W.R., supra, 205 N.J. at 32 (quoting N.J.S.A. 9:8.46(b)). If the Division satisfies its burden, the court may enter appropriate orders to protect the child. See, e.g., N.J.S.A. 9:6-8.31(b) (awarding temporary custody of the child to a "suitable person"); N.J.S.A. 9:6-8.55 (permitting court to enter appropriate orders of protection). When the Division opts to proceed in the Family Part, it often accompanies its complaint for custody, care and supervision of the child under N.J.S.A. 9:6-8.21 to -8.82, with a claim the family is in need of services under N.J.S.A. 30:4C-12.

However, there are circumstances where the Division investigates an incident administratively and concludes a person committed child abuse or neglect, as defined by N.J.S.A. 9:6-

8.21(c)(4), forwards the perpetrator's name to the child abuse registry, N.J.S.A. 9:6-8.11, but does not seek further relief. In other words, if the Division administratively concludes a child has been abused or neglected, it need not also file a complaint in the Superior Court.

In the past, the administrative findings of child abuse or neglect were categorized as "substantiated," "not substantiated," or "unfounded." However, effective April 1, 2013, the Department adopted a regulatory framework providing it could render one of four findings at the conclusion of an abuse or neglect investigation. N.J.A.C. 3A:10-7.3(c). Now, the Division may conclude an abuse or neglect allegation is: "substantiated," "established," "not established," or "unfounded." N.J.A.C. 3A:10-7.3(c).

The regulations explain:

> 1. An allegation shall be "substantiated" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21 and either the investigation indicates the existence of any of the circumstances in N.J.A.C. 3A:10-7.4 or substantiation is warranted based on consideration of the aggravating and mitigating factors listed in N.J.A.C. 3A:10-7.5.
>
> 2. An allegation shall be "established" if the preponderance of the evidence indicates that a child is an "abused or neglected child" as defined in N.J.S.A. 9:6-8.21, but the act or acts committed or omitted do not

warrant a finding of "substantiated" as defined in (c)1 above.

3. An allegation shall be "not established" if there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm.

4. An allegation shall be "unfounded" if there is not a preponderance of the evidence indicating that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, and the evidence indicates that a child was not harmed or placed at risk of harm.

[N.J.A.C. 3A:10-7.3(c).]

In evaluating information gathered, the Department considers the following "aggravating factors" to determine whether abuse or neglect should be substantiated or established:

1. Institutional abuse or neglect;

2. The perpetrator's failure to comply with court orders or clearly established or agreed-upon conditions designed to ensure the child's safety, such as a child safety plan or case plan;

3. The tender age, delayed developmental status, or other vulnerability of the child;

4. Any significant or lasting physical, psychological, or emotional impact on the child;

5. An attempt to inflict any significant or lasting physical, psychological, or emotional harm on the child;

6. Evidence suggesting a repetition or pattern of abuse or neglect, including multiple instances in which abuse or neglect was substantiated or established; and

7. The child's safety requires separation of the child from the perpetrator.

[N.J.A.C. 3A:10-7.5(a).]

Additionally, the following mitigating factors are assessed:

1. Remedial actions taken by the alleged perpetrator before the investigation was concluded;

2. Extraordinary, situational, or temporary stressors that caused the parent or guardian to act in an uncharacteristic abusive or neglectful manner;

3. The isolated or aberrational nature of the abuse or neglect; and

4. The limited, minor, or negligible physical, psychological, or emotional impact of the abuse or neglect on the child.

[N.J.A.C. 3A:10-7.5(b).]

A "substantiated" finding applies to the most severe cases, and specifically results in matters involving death or near death, inappropriate sexual conduct, serious injuries requiring significant medical intervention, or repeated acts of physical abuse. N.J.A.C. 3A:10-7.4. Although an "established" finding of abuse or neglect appears to apply to less egregious conduct, regulations make clear "[a] finding of either established or

substantiated <u>shall</u> constitute a determination by the Department that a child is an abused or neglected child pursuant to <u>N.J.S.A.</u> 9:6-8.21." <u>N.J.A.C.</u> 3A:10-7.3(d) (emphasis added). See <u>D.B.</u>, <u>supra</u>, 443 <u>N.J. Super.</u> at 442. Conversely, "[a] finding of either not established or unfounded shall constitute a determination by the Department that a child is not an abused or neglected child pursuant to <u>N.J.S.A.</u> 9:6-8.21." <u>N.J.A.C.</u> 3A:10-7.3(d).

The Division asserts an established finding is used to denote less severe conduct, and maintains the gradation of findings permits the "records to better reflect the circumstances of an investigation" and "allow the Division to distinguish between incidents of abuse and neglect," identifying the most severe as "substantiated and subject to a Child Abuse Record Information (CARI) check." 44 <u>N.J.R.</u> 357(a) (Feb. 21, 2012). Thus, the regulatory differentiation between the "substantiated" and "established" findings appears to be a question of the degree of harm and, possibly, the strength of the gathered proofs.

### III.

On appeal, raising issues of procedural due process and fundamental fairness, V.E. urges us to determine an established finding essentially places her in the same legal position as a

substantiated finding. She insists the report and record makes her subject to the adverse consequences of disclosure of the Division's abuse finding, yet she was denied the right to contest the determination in an adjudicatory forum.

The Division admits defendant's name and its report of established child abuse are in its database, but maintains V.E. is not included in the "central abuse registry," which is a reporting the Division reserves solely for substantiated findings. Further, the Division admits disclosure of an established finding is authorized in more limited circumstances than a substantiated finding. Relying on that distinction, the Division asserts its established finding amounts to nothing more than an investigatory determination, for which no adjudicatory review is required.

The Law Guardian for R.S. asserts the child's safety and security were properly protected in the continued Title 30 action. Thus, the Law Guardian supports the dismissal of the Title 9 action, and suggests administrative review is more appropriate to challenge an established finding. Alternatively, the Law Guardian suggests this court could order a remand to develop the record.

## A.

"An administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference." Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J. Super. 93, 102 (App. Div. 1997)). We recognize "[a]n agency's exercise of its statutorily delegated responsibilities is entitled to a strong presumption of reasonableness and our court will generally defer to that agency's expertise and superior knowledge in the field." D.B., supra, 443 N.J. Super. at 443. "Although we recognize that deference is generally given to an administrative agency charged with interpretation of the law, we are not bound by the agency's legal opinions." Levine v. State, Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001) (citing G.S. v. Dep't of Human Servs., 157 N.J. 161, 170 (1999)).

## B.

We start our review by examining the relevant statutes. The Legislature has directed the Department maintain a child abuse registry, which "shall be the repository of all information regarding child abuse or neglect that is accessible to the public pursuant to State and federal law." N.J.S.A. 9:6-

8.11 (emphasis added). The statute does not differentiate between the type of abuse or neglect findings; rather, such designations are regulatory.

We understand all records for which abuse and neglect has been "substantiated," "established," or "not established" are retained by the Department. N.J.A.C. 3A:10-8.1(b). See D.B., supra, 443 N.J. Super. at 442. Further, the Department does not isolate those matters where abuse or neglect was substantiated. Rather, one database contains all information regarding investigations of child abuse or neglect. N.J.A.C. 3A:10-7.3(d). Although a regulation limits disclosure of "substantiated" findings when a CARI check is required, we locate no specific insulation from the child abuse registry for individuals against whom abuse and neglect is established, other than the Division's assurances. N.J.A.C. 3A:10-7.7(a) ("A Department employee shall disclose only substantiated findings for a . . . (CARI) check.") But see 45 N.J.R. 738(a) (April 1, 2013) (stating the Division will not disclose "established" findings). We reject the contention that the regulations' purported limitations can restrict the clear scope of disclosure authorized by N.J.S.A. 9:6-8.10a(b).

The information in the child abuse registry is not public information, as it is considered confidential. N.J.S.A. 9:6-

8.10a(a); N.J.S.A. 9:6-8.11.[6]  However, N.J.S.A. 9:6-8.10a(b) expressly authorizes release of abuse or neglect records upon written request to designated persons and entities.  A lengthy list of institutions, governmental entities, and persons to whom the Division may release information contained in the registry regarding any finding of abuse or neglect is set forth in N.J.S.A. 9:6-8.10a(b)(1) to (23), -8.10a(c) to (g).  Under the statute, disclosure is not limited solely to perpetrators of substantiated findings of abuse or neglect, subject to a CARI check.  Even though N.J.A.C. 3A:10-7.7(a) restricts Department employees' disclosure of only substantiated findings when a CARI check is requested,[7] that regulation does not encompass all authorized disclosures of abuse and neglect findings.

In a prior matter, this court observed, subject to the statute's confidentiality requirements, the Division is empowered to disclose "all information" from its investigations of abuse or neglect "regardless of whether the allegations are substantiated and whether . . . the information has been entered

---

[6]  Violation of the confidentiality restrictions as defined, may result in prosecution.  N.J.S.A. 9:8-10b.

[7]  We also note a CARI check is required in connection with employment-related background screenings, D.B., supra, 443 N.J. Super. 442; N.J.A.C. 3A:10-7.7(a), and for applications seeking to serve as a foster or adoptive parent.  N.J.A.C. 10:122C-5.5(a)(1).  An established finding would not be revealed for these purposes.

in the Central Registry."  N.J. Div. of Youth & Family Servs. v. M.R., 314 N.J. Super. 390, 402 (App. Div. 1998).  Cf. N.J. Div. of Youth & Family Servs. v. S.S., 372 N.J. Super. 13, 27 (App. Div. 2004) (The scope of "[p]ermissible disclosure of names contained in the Central Registry . . . is . . . extensive."), certif. denied, 182 N.J. 426 (2005).

In many instances, the authorized disclosure relates to an investigation of abuse or neglect conducted by police, doctors, hospitals, the Office of Administrative Law, grand juries, and the courts.  N.J.S.A. 9:6-8.10a(b)(2), (3), (4), (6), (7).  See also N.J. Dep't of Children & Families, Div. of Child Prot. and Permanency v. E.D.-O., 223 N.J. 166, 170 n.2 (2015) ("The records may be disclosed to physicians, courts, child welfare agencies, and certain employers.").

However, disclosure as authorized by the Legislature is not as circumscribed as the Division suggests.  Information may be released:  to "[a] family day care sponsoring organization for the purpose of providing information on child abuse or neglect allegations involving prospective or current providers or household members," N.J.S.A. 9:6-8.10a(b)(10), N.J.S.A. 30:5B-25.2; to any person or entity which must conduct a background check or employment providing services to children that screens for child abuse or neglect, N.J.S.A. 9:6-8.10a(b)(13), (14); or

22                                              A-0586-15T4

regarding a person being evaluated as a possible caregiver for a child in the Division's care, N.J.S.A. 9:6-8.10a(b)(16). The records may be released when a person seeks registration as a professional guardian, N.J.S.A. 9:6-8.10e, licensure for a daycare facility, N.J.S.A. 30:5B-25.3; qualification to provide kinship care, N.J.A.C. 10:122C-2.1(e);[8] and persons seeking to adopt, N.J.S.A. 9:3-54.2(b).

A prior finding of abuse or neglect may be used by the Division to determine an individual's suitability as a prospective child care placement of children in other public and private agencies, N.J.S.A. 30:5B-25.3, and "facts of those prior acts of abuse apparently are considered by [Division] representatives when determining whether future allegations are 'substantiated' based on a pattern of abuse," Fall & Romanowski, N.J. Family Law, Relationships Involving Children § 30:7-1 (2015). "Finally, and perhaps most significantly, an abuse or neglect finding may provide a basis for an action to terminate a parent's custodial rights to a child. N.J.S.A. 30:4C-15(a) (allowing petition to terminate parental rights based on

---

[8] According to the January 3, 2017, Notice of Administrative Changes, N.J.A.C. 10:122C was recodified to N.J.A.C. 3A:51. However, as of the publication of this opinion, the recodification is not yet manifested in the Code itself.

adjudication of abuse or neglect)." N.J. Div. of Child Prot. & Permanency v. Y.N., 220 N.J. 165, 179 (2014).

In D.B., this court noted the Division's stated distinction between substantiated and established findings, but we were not requested to squarely decide the impact of such an established finding because our examination in D.B. involved the right of the defendants-teachers to challenge the communication to their employer of the Department's findings "child abuse charges have not been substantiated." D.B., supra, 443 N.J. Super. at 431 (emphasis added). The defendants argued "N.J.A.C. 10:129-8.1 [now at N.J.A.C. 3A:10-8.1], which allows the Department to retain unproven accusations forever is a violation of N.J.S.A. 9:6-8.40a."[9] Id. at 444. We rejected this argument and concluded

> the interest of retaining information about alleged claims of abuse, where some cause for concern is demonstrated, is within the mandate given to the Department to protect children from abuse. The records retained for "substantiated" allegations are the only ones made public, thus [the defendants] have a lesser due process right in regard to information kept for the use of the agency and entities involved in the protection of children.

---

[9] "The Division . . . shall expunge from its records all information relating to a report, complaint, or allegation of an incident of child abuse or neglect . . . which the division . . . has determined . . . unfounded." N.J.S.A. 9:6-8.40a(a).

[Ibid.]

Our reasoning in D.B. was grounded on the specific investigatory nature of the agency's conclusion. Understanding the Division is granted broad authority to investigate child abuse allegations, we determined its release of reported unsubstantiated findings to the defendants' employer did not require the same procedural protections mandated by an adjudicatory proceeding. D.B., supra, 443 N.J. Super. at 446-47. See also Dep't of Children & Families' Institutional Abuse Investigation Unit v. S.P., 402 N.J. Super. 255, 270 (App. Div. 2008) ("[A] teacher is not entitled to an adjudicatory hearing to challenge a finding . . . child abuse allegations are not substantiated, even when DYFS has expressed 'concerns' about a teacher's conduct because such a finding is 'intrinsically less damaging to reputation than a finding that child abuse charges have been substantiated.'") (quoting In re L.R., supra, 321 N.J. Super. at 460; In re L.R., supra, 321 N.J. Super. at 449) ("We also conclude that when DYFS submits a report to a school district that it has found a charge of child abuse against a teacher to be 'not substantiated with concerns,' the teacher has no right to a hearing to contest DYFS' investigatory findings.").

Here, the Division similarly suggests its established finding is a mere "investigatory finding made solely by the Division and not for disclosure to third parties." We disagree.

Although the regulations provide some differentiation in the level of disclosure between individuals against whom abuse or neglect is "established" and those against whom abuse and neglect is "substantiated,"[10] we conclude there is broad impact accompanying an established finding, which significantly affects an individual against whom it is issued. The effect of a finding that abuse and neglect is established is much closer to the effect of a substantiated finding than a not substantiated finding.

As we have observed, despite the Division's interpretation of promulgated regulations, N.J.S.A. 9:6-8.10a(b) and other statutes allowing release of records, findings, and reports of a person found to commit child abuse or neglect or who put a child at risk of serious injury or harm do not exclude from the disclosure the "less severe" established finding of child abuse

---

[10] We are aware N.J.A.C. 3A:10-7.6, which mandates the Department's obligation to issue notification of its findings of abuse or neglect to a perpetrator, an abused or neglected child, the child's parents or guardians, and others, restricts notification to include persons regarding substantiated abuse or neglect findings. The regulation, which pre-dates the 2013 amendments, does not mention an obligation to notify those involved in matters resulting in established findings.

or neglect. In short, an established finding is a conclusion abuse or neglect occurred, as defined by N.J.S.A. 9:6-8.21(c)(4). N.J.A.C. 3A:10-7.3(d). Disclosure of an established finding is authorized by N.J.S.A. 9:6-8.10a(b) and other statutes, imposing upon the rights of a perpetrator. Thus, the result of an established finding is "significant" and is accompanied by "longstanding adverse consequences," which, in part, match the effects attached to a substantiated finding. Y.N., supra, 220 N.J. at 179.

IV.

We turn to the heart of V.E.'s appeal, which regards the fact she was denied independent review of the Division's determination establishing R.S. was an abused or neglected child and that it was she who subjected the child to "substantial risk of injury and environmental neglect." She seeks the opportunity to challenge this conclusion before an independent factfinder.

A.

Administrative hearings are permitted to attack a substantiated finding of abuse and neglect. N.J.A.C. 3A:5-4.3(a)(2)[11] (providing that by request a person can seek administrative review of substantiated findings); D.F., supra, 377 N.J. Super. at 64-66. But, "N.J.A.C. 10:120A-4.3(a)(2) [now

_____

[11]    Formerly N.J.A.C. 10:120A-4.3(a)(2).

at N.J.A.C. 3A:5-4.3(a)(2)] does not provide a right to an administrative hearing to one challenging a finding that abuse or neglect has been 'established,' 'not established,' or 'unfounded.'" D.B., supra, 443 N.J. Super. at 442.

Few cases examine the nature of review of the Division's findings and none examine the right to challenge an established finding. Prior opinions have addressed possible due process concerns arising from the Division's findings. For example, the defendants in D.B. attacked the Division's disclosure of "not substantiated" findings because they were denied an administrative hearing. We concluded no hearing was required because the defendants were afforded due process protections such as, defendants retained the right to challenge the wording used in the notice sent to the defendants' employer, D.B., supra, 443 N.J. Super. at 443-44, and a hearing was required, prior to any action by the school district impacting the defendants' employment. Id. at 443.

> A teacher against whom a finding has been made by [the Division] expressing concern about the teacher's conduct "has a due process right to challenge the wording of such a finding on the ground that it is misleading and unfairly damaging to his reputation." "The impact upon a teacher's reputation of a finding by [the Division] expressing concern about the teacher's conduct may be significant, especially if it is accompanied by what appears to be an affirmative finding by [the Division] that a

teacher has had improper physical contact with a student." "The investigatory findings and 'concerns about the teacher's conduct,' warrant 'some due process protection' by 'judicial review and correction [of the findings] to curb administrative abuses.'"

[S.P., supra, 402 N.J. Super. at 270 (citations omitted).]

We reject any suggestion the present matter is governed by our holding in D.B. First, as we have discussed, significant ramifications of disclosure are attached to an established finding. Second, no availing due process protections are offered to V.E. if aggrieved by the disclosure of what she believes is an unsupported conclusion.[12] We also reject the notion that only the broader implications of a substantiated finding trigger adjudicatory review.

Federal and state courts alike recognize due process as a "flexible" concept, such that the scope of its procedural protections depend upon the circumstances at issue. In re R.P., 333 N.J. Super. 105, 112-13 (App. Div. 2000) (citing Doe v. Poritz, 142 N.J. 1, 106 (1995)). When determining what process is due, the primary inquiry is "whether there is a protectable liberty interest at stake." In re E. Park High Sch., supra, 314 N.J. Super. at 160. A liberty interest is not implicated

---

[12] The parties agree regulations limit the remedy to challenge an established finding to an appeal to this court.

anytime a governmental agency transmits information that may impugn a person's reputation. L.R., supra, 321 N.J. Super. at 460.

> Whether the requirements of procedural due process apply to the interest asserted hinges upon whether it is encompassed in the Fourteenth Amendment's protections of life, liberty and property. Ingraham v. Wright, 430 U.S. 651, 672, 97 S. Ct. 1401, 1413, 51 L. Ed. 2d 711 (1977). If one of these interests is implicated, the second step of the analysis is to determine what procedure would afford the proper level of procedural due process to an individual being deprived of that right. Ibid.

> The interest in reputation and the interest in nondisclosure have both been recognized as protectable liberty interests. Whalen v. Roe, 429 U.S. 589, 598-600, 97 S. Ct. 869, 876-877, 51 L. Ed. 2d 64, 73-74 (1977); Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S. Ct. 507, 510, 27 L. Ed. 2d 515, 517 (1971); Doe v. Poritz, 142 N.J. 1, 100 (1995). However, reputation "apart from some more tangible interests such as employment, is not either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." Paul v. Davis, 424 U.S. 693, 701-702, 96 S. Ct. 1155, 1160-1161, 47 L. Ed. 2d 405, 413-414 (1976). Thus, it has been said there must be "stigma plus" some other tangible element in order to be considered a "protectable liberty interest." Valmonte v. Bane, 18 F.3d at 992, 999 (2d Cir.1994).

> [M.R., supra, 314 N.J. Super. at 402-03.]

In the context of due process claims concerning privacy and reputational interests, the New Jersey Constitution extends due

process protection to personal reputation, "without requiring any other tangible loss." Doe, supra, 142 N.J. at 104. But "even if a person has a constitutionally protected interest, it does not automatically follow that the person must be afforded an opportunity for an adjudicatory hearing." R.P., supra, 333 N.J. Super. at 113.[13] Therefore, "if a government agency publicly disseminates findings which adversely affect the subject of an investigation, the agency may be required as a matter of due process to establish procedures by which the investigatory findings may be challenged." In re Allegations of Physical Abuse at Blackacre Academy on 2/10/93, 304 N.J. Super. 168, 182 (App. Div. 1997). See also Hannah v. Larche, 363 U.S. 420, 442, 80 S. Ct. 1502, 1514-15, 4 L. Ed. 2d 1307, 1321 (1960) ("[W]hen governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process.").

---

[13] Federal law differs as a party must demonstrate "damage to his or her reputation and impairment of some other interest" to establish a protectable liberty interest under federal law. In re E. Park High Sch., supra, 314 N.J. Super. at 160. State law "gives a plaintiff a protectable interest in reputation warranting due process protections 'without requiring any other tangible loss.'" Id. at 161.

In M.R., we concluded disclosure of a substantiated finding of abuse or neglect standing alone "would not rise to the level of deprivation of [a defendant's] liberty interest." M.R., supra, 314 N.J. Super. at 403-04. Nevertheless, the court determined the procedure employed violated "administrative due process requirements," id. at 409, and concluded the defendant was entitled to "an opportunity for an evidentiary hearing" to challenge a substantiated finding.[14] Ibid.

---

[14] The opinion of the court relied on a violation of fundamental fairness:

> [T]he doctrine of fundamental fairness is an integral part of due process, and is often extrapolated from or implied in other constitutional guarantees. The doctrine effectuates imperatives that government minimize arbitrary action, and is often employed when narrowed constitutional standards fall short of protecting individual[s] against unjustified harassment, anxiety, or expense.
>
> [State v. Miller, 216 N.J. 40, 71-72 (2013), cert. denied, ___ U.S. ___, 134 S. Ct. 1329, 188 L. Ed. 2d 339 (2014) (citations omitted).]

Courts have applied the fundamental fairness doctrine when "someone was being subjected to potentially unfair treatment and there was no explicit statutory or constitutional protection to be invoked." Doe, supra, 142 N.J. at 109. However, two concurring judges, Judge Skillman, see M.R., supra, 314 N.J. Super. at 417-25, and Judge Eichen, id. at 426, rejected application of the use of fundamental fairness doctrine, and separately concluded the defendant was entitled to a trial type administrative hearing.

The Division refutes V.E.'s assertions maintaining an established finding has no direct or indirect impact on a perpetrator's "employment or liberty interests" because the Division does not consider the perpetrator as someone included in the child abuse registry. It reasons no adjudicatory hearing rights arise because the information is generally kept for agency use. See D.B., supra, 443 N.J. Super. at 444 (stating individuals "have a lesser due process right in regard to information kept for the use of the agency and entities involved in the protection of children").

For the reasons outlined in our opinion, we reject as unsupported the premise of the Division's position. What due process requires depends in part on "the private interest at stake" and on "the fiscal and administrative burdens . . . additional procedural safeguards would entail." J.E. on behalf of G.E. v. State, 131 N.J. 552, 566-67 (1993). Applying this test, we conclude an administrative hearing is required to contest the Division's conclusion abuse or neglect is established.

As we have detailed, an established finding is a conclusion of child abuse or neglect, which is subject to the concomitant disclosure to persons, agencies, and entities we have identified. Although disclosure is not as extensive as a

substantiated finding, it nonetheless may affect certain employment opportunities related to children, the right to adopt or serve as a resource parent, and impact possible future Division proceedings. Certainly V.E.'s private interests are at stake.

It is also undisputed defendant was denied an opportunity to challenge the Division's findings. The Division's conclusion was reflected only in the Department's "Investigative Summary," finalized on February 12, 2015, and disseminated to defendant's counsel during the February 19, 2015 case management conference. Importantly, V.E. was not informed this report represented a final agency decision.

Examining the content of the report, we note it includes circumstantial evidence supporting V.E.'s possible knowledge of the cannabis growing operation, such as the pervasive odor of marijuana and V.E.'s initial evasiveness when asked about her relationship with A.S. Yet, V.E. and others offered evidence disputing V.E.'s knowledge of drugs in her home, the marijuana growing in the basement, or the illegal electrical overload caused by the illicit operation. Also, the growing operation occurred behind locked doors to which V.E. was not shown to have keys; V.E. entered the basement only to wash laundry and never viewed the space she asserted was rented by A.S. to third-

parties; R.S.'s statements to the Division confirmed these assertions; the child's Godparents maintained neither A.S. nor V.E. used or sold drugs, which was borne out by their respective substance abuse evaluations; R.S. regularly attended and performed well in school; and defendant was an involved parent who provided for the health and physical well-being of R.S., as well as her older college-age child.

On this record, necessary procedural safeguards must be employed to allow V.E. the right to challenge disputed adjudicative facts. This point is highlighted further when the credibility of witnesses impacts the factual foundation underpinning the agency's conclusion. Under such circumstances, procedural fairness entitles V.E. to an opportunity to be heard. The administrative action must be accompanied by the ability to seek an administrative remedy. See M.R., supra, 314 N.J. Super. at 411 ("The right to a hearing before a government agency, whose proposed action will affect the rights, duties, powers or privileges of, and is directed at, a specific person, has long been embedded in our jurisprudence." (quoting Cunningham v. N.J. Dep't of Civil Serv., 69 N.J. 13, 19 (1975))). See also N.J. Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 298-99 (2011); D.F., supra, 377 N.J. Super. at 64.

We recognize a party against whom abuse or neglect is established may seek recourse through a direct appeal from what amounts to the agency's final decision.[15] N.J.A.C. 3A:5-2.8. See Fall & Romanowski, supra, § 30:6-2(b) (2015) ("To the extent that administrative review is precluded, such findings are a final decision appealable as of right to the Appellate Division pursuant to R. 2:2-3(a)(2)."). However, as we recognized in M.R., the determination of disputed facts, including credibility determinations, is not the function of this court. M.R., supra, 314 N.J. Super. at 411-12. Accordingly, we reject the suggestion appellate review should be undertaken, and, as necessary, a remand ordered. The inherent delay of such a process is untenable, particularly in light of the fact the administrative review process is well-established and easily engaged.

Finally, we do not view the additional need for an administrative hearing as a burden, which significantly outweighs the need to adjudicate the disputed facts impacting the private interest of the party affected by the agency's finding. During argument it was estimated by the Deputy

---

[15] The Division admits no document informed defendant the report served as the final agency determination, subject to appeal as of right. At oral argument the Division agreed the issue is raised in this appeal.

A-0586-15T4

Attorney General that approximately five percent of the approximately 2000 abuse and neglect determinations issued annually were "established" findings. Not all of these approximately 100 matters will be challenged, suggesting the burden is manageable. Overall, "we cannot ignore the overriding concern for the appearance of procedural fairness in agency adjudications." Id. at 412 (quoting J.E. on behalf of G.E., supra, 131 N.J. at 568).

We hold when the Division finds parental conduct establishes abuse or neglect of a child, subjecting the individual to the ramifications of disclosure set forth in various identified statutes, a party who seeks to challenge that finding shall be entitled to an administrative hearing.

### B.

V.E. alternatively sought to challenge the Division's finding before the Family Part.[16] She argues the dismissal over

_____

[16] Regulations recognize the potential for concurrent investigations and review by the Division and the Family Part, resulting in both administrative and judicial findings regarding any abuse or neglect allegations. See e.g., N.J.A.C. 3A:10-7.3(h)(1) (providing the Division to retain administrative authority to decide "whether an allegation of conduct determined to be abuse or neglect by the . . . Chancery Division, is established or substantiated"); N.J.A.C. 3A:10-7.3(h)(3) (authorizing the Division the administrative authority to "[d]etermine the finding for each allegation of abuse or neglect" even if the court declines to adjudicate the issue).

her objection violated Rule 4:37-1(b).  We are not persuaded.
We briefly address this challenge.

> When a judge has given the Division
> authority and responsibility for the care
> and supervision of a child removed from his
> home pursuant to Title 9 and Title 30,
> N.J.S.A. 9:6-8.30 and N.J.S.A. 30:4C-12, the
> Division may proceed under Title 30,
> irrespective of a finding of abuse or
> neglect.  M.M., supra, 189 N.J. at 292-93
> (2007).  However, when the abuse or neglect
> proceeding is terminated without a finding
> that the allegations in the complaint are
> substantiated, the Title 9 action should be
> dismissed after exercise of jurisdiction
> under Title 30 and orders should be entered
> in accordance with the standards and
> procedures pertaining to Title 30
> litigation.
>
> [Div. of Youth & Family Servs. v. N.D., 417
> N.J. Super. 96, 109 (App. Div. 2010).]

Rule 4:37-1(b) governs the voluntary dismissal of actions
by order of the court.  In relevant part, Rule 4:37-1(b)
provides that "an action shall be dismissed at the plaintiff's
instance only by leave of court and upon such terms and
conditions as the court deems appropriate" and, unless otherwise
stated, such dismissals are made without prejudice.  Our courts
have consistently held that Rule 4:37-1(b) is intended to
protect litigants from having to defend a subsequent action
premised upon similar charges in the future.  Burns v. Hoboken
Rent Leveling & Stabilization Bd., 429 N.J. Super. 435, 445
(App. Div. 2013).  This decision lies within the judge's

reasoned discretion. <u>A.T. v. Cohen</u>, 445 <u>N.J. Super.</u> 300, 307 (App. Div. 2016).

The Division's request resulted from its conclusion abuse or neglect was not substantiated and, with limited services, the child could safely be returned home. Although we disagree with the suggestion V.E. was not subject to significant adverse ramifications of disclosure, (a determination noted by the reviewing judge), we recognized the Division's objective to effectuate reunification was achieved. The "primary concern" under Title 9 "is the protection of children, not the culpability of parental conduct." <u>G.S. v. Dep't of Human Servs.</u>, 157 <u>N.J.</u> 161, 177 (1999). <u>See also</u> <u>N.J.S.A.</u> 9:6-8.50(c) ("[I]f the court concludes that its assistance is not required on the record before it, the court shall dismiss the [Title 9] complaint and shall state the grounds for the dismissal.").

The ordered administrative hearing on the issues surrounding the Division's findings satisfies adequate review. Under these facts, we cannot agree the Title 9 litigation should have remained open to provide such an adjudication, when the child's safety was no longer in dispute. We conclude the judge did not abuse her discretion in granting the Division's motion to dismiss.

V.

In summary, we affirm the order dismissing the Title 9 litigation. We reverse the agency's denial of an adjudication hearing and remand the matter to the Office of Administrative Law for proceedings consistent with our opinion.

Affirmed in part. Reversed and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION