# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5307-17T4

DEPARTMENT OF CHILDREN
AND FAMILIES, DIVISION OF
CHILD PROTECTION AND
PERMANENCY

      Petitioner-Respondent,

v.

T.G.

      Respondent-Appellant.

_____

      Argued September 16, 2019 – Decided December 16, 2019

      Before Judges Messano and Susswein.

      On appeal from the New Jersey Department of Children and Families, Division of Child Protection and Permanency, Docket No. AHU 17-0229.

      Thomas Ercolano, III argued the cause for appellant (Forster Arbore Velez, attorneys; Thomas Ercolano, III, on the briefs).

      Joshua Paul Bohn, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Joshua Paul Bohn, on the brief).

PER CURIAM

Respondent, T.G., appeals from a final administrative decision by the Division of Child Protection and Permanency (Division) to substantiate an allegation of child neglect. Respondent does not dispute that she neglected her four-year-old daughter by driving under the influence of alcohol while the toddler was in the car and not properly secured in a child safety harness. Respondent contends, however, that the incident should have been classified as "established" rather than "substantiated" under the tiering system established in N.J.A.C. 3A:10-7.3(c).

The distinction between a "substantiated" violation and an "established" one is significant. The Division will not issue a license to a child daycare facility if that facility employs a staff member who has a record of a "substantiated" incident of child abuse or neglect. N.J.S.A. 30:5B-6.2. Here, respondent operates a daycare center.

After reviewing the record, we conclude that the final agency decision is supported by sufficient credible evidence and was not arbitrary, capricious, or unreasonable. We therefore have no basis upon which to substitute our own judgment for that of the Administrative Law Judge (ALJ) or the Division in this

case. Accordingly, we affirm the "substantiated" classification of respondent's neglectful conduct.

## I.

## A.

We begin our analysis by acknowledging the deferential standard of review that governs this appeal. An appellate court may reverse a decision of an administrative agency only if it is "arbitrary, capricious, or unreasonable, or if it is not supported by substantial credible evidence in the record as a whole." P.F. v. N.J. Div. of Developmental Disabilities, 139 N.J. 522, 529-30 (1995) (citing Dennery v. Bd. of Educ., 131 N.J. 626, 641 (1993)). Agency actions are presumed valid and reasonable, and the plaintiff bears the burden to overcome this presumption. Bergen Pines Cty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 477 (1984).

Generally,

> [c]ourts can intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or other state policy. Although sometimes phrased in terms of a search for arbitrary or unreasonable action, the judicial role is generally restricted to three inquiries: (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency bases its action; and (3)

3

> whether, in applying legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Musick, 143 N.J. 206, 216 (1996) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)).]

Furthermore, it is well settled that a reviewing court cannot substitute its own judgment in place of the agency judgment, even if the court would have reached a different result. In re Stallworth, 208 N.J. 182, 194 (2011) (citing In re Carter, 191 N.J. 474, 483 (2007)). This is particularly true when, as in this instance, we are reviewing an issue related to an agency's special "expertise and superior knowledge of a particular field." Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)).

## B.

To understand the context of respondent's contention, it is appropriate to briefly review the regulatory classification framework the Division uses to determine whether a child abuse or neglect allegation is "established" or "substantiated." The regulations governing child abuse and neglect investigations authorize four possible outcomes: "unfounded," "not established," "established," and "substantiated." N.J.A.C. 3A:10-7.3(c). The

present appeal requires us to consider the distinction between the latter two classifications.

An allegation is "established" when "the preponderance of the evidence indicates that a child is an 'abused or neglected child' . . . but the act or acts committed or omitted do not warrant a finding of 'substantiated.'" N.J.A.C. 3A:10-7.3(c)(2). An allegation is "substantiated" when "the preponderance of the evidence indicates that a child is an 'abused or neglected child' . . . and either the investigation indicates the existence of any of the circumstances in N.J.A.C. 3A:10-7.4 or substantiation is warranted based on consideration of the aggravating and mitigating factors listed in N.J.A.C. 3A:10-7.5." N.J.A.C. 3A:10-7.3(c)(1).

Accordingly, the Division can find a "substantiated" case of abuse by means of two distinct and independently sufficient methods. First, N.J.A.C. 3A:10-7.4 lists six circumstances[1] that are sometimes referred to as the

---

[1] The six absolute circumstances are:

> 1. The death or near death of a child as a result of abuse or neglect;
> 2. Subjecting a child to sexual activity or exposure to inappropriate sexual activity or materials;

(continued)

"absolute" circumstances. N.J.A.C. 3A:10-7.4. If any one of these enumerated circumstances is proven by a preponderance of the evidence, the Division must find the incident to be "substantiated."

The second classification method involves a greater degree of discretion. Under this method, the Division considers seven aggravating factors[2] and four

3. The infliction of injury or creation of a condition requiring a child to be hospitalized or to receive significant medical attention;
4. Repeated instances of physical abuse committed by the perpetrator against any child;
5. Failure to take reasonable action to protect a child from sexual abuse or repeated instances of physical abuse under circumstances where the parent or guardian knew or should have known that such abuse was occurring; or
6. Depriving a child of necessary care which either caused serious harm or created a substantial risk of serious harm.

[N.J.A.C. 3A:10-7.4.]

[2] The aggravating factors are:

1. Institutional abuse or neglect;
2. The perpetrator's failure to comply with court orders or clearly established or agreed-upon conditions designed to ensure the child's safety, such as a child safety plan or case plan;
3. The tender age, delayed developmental status, or other vulnerability of the child;

(continued)

6

mitigating factors.[3]  N.J.A.C. 3A:10-7.5.  If the applicable mitigating factors outweigh the aggravating factors, the case is "established."  See ibid.  If the aggravating factors outweigh the mitigating factors, the case is "substantiated."  See ibid.

---

4. Any significant or lasting physical, psychological, or emotional impact on the child;

5. An attempt to inflict any significant or lasting physical, psychological, or emotional harm on the child;

6. Evidence suggesting a repetition or pattern of abuse or neglect, including multiple instances in which abuse or neglect was substantiated or established; and

7. The child's safety requires separation of the child from the perpetrator.

[N.J.A.C. 3A:10-7.5(a).]

[3] The mitigating factors are:

1. Remedial actions taken by the alleged perpetrator before the investigation was concluded;

2. Extraordinary, situational, or temporary stressors that caused the parent or guardian to act in an uncharacteristic abusive or neglectful manner;

3. The isolated or aberrational nature of the abuse or neglect; and

4. The limited, minor, or negligible physical, psychological, or emotional impact of the abuse or neglect on the child.

[N.J.A.C. 3A:10-7.5(b).]

A-5307-17T4

## II.

### A.

We next consider the particular circumstances surrounding the incident of child neglect at issue in this appeal. We refer to this episode as the DWI incident. On December 7, 2015, around 1:16 p.m., a police officer responded to a report that someone was driving a car erratically with a child inside. The officer pulled over respondent's vehicle after determining that it matched the description in the report. While speaking with respondent, the officer detected the odor of alcohol and noticed that she was chewing gum, which the officer interpreted to be an attempt to mask the smell of alcohol. Respondent failed all three field sobriety tests that were administered and was placed under arrest for driving while intoxicated.

After being arrested but while still on the scene, respondent attempted to prevent the officer from closing the door of the police vehicle by keeping her foot outside of the car. She also attempted to remove her handcuffs. As she was being transported from the scene, respondent screamed at the officer and attempted to kick out the windows of the police vehicle. Once at police headquarters, respondent refused to provide a breath sample for testing.

8

The Division case worker assigned to conduct the investigation interviewed respondent at the police station. The case worker immediately could tell that respondent was intoxicated because she was lethargic and slurring her words. The case worker's investigation determined that in addition to driving while intoxicated, respondent also failed to properly secure her four-year-old daughter, R.V., in a child car seat. At the time of the DWI incident, R.V. was wearing a lap belt but was not secured in the five-point harness. Respondent told both the police officer and case worker that she had properly secured R.V. in the harness, and she claimed that R.V. must have removed it herself. Based on the foregoing circumstances, the case worker removed R.V. from respondent's care.

The DWI incident was not the first time the Division removed R.V. On July 13, 2015, respondent called the police to report an incident of domestic violence. Police arrived and saw that respondent was bruised and bleeding and that there were broken dishes in the home. Respondent's two children, R.V. and M.C., were present in the home but were not injured. Respondent appeared to be intoxicated. M.C.'s father, A.C., was not present when the police arrived, but the police eventually located him. A.C. gave the police a video that showed

respondent harming herself in front of her children.  Based on this episode and the video, the Division removed both children from the house.

The July incident went before a Family Part judge on October 26, 2015. The Division concluded that the July incident constituted an "established" case of neglect.  Respondent did not appeal that determination.

Following the DWI incident, respondent undertook efforts to address her mental health and substance abuse problems.  Respondent spent five days at a detoxification facility before being transferred to another rehabilitation facility that offers a "dual diagnosis"[4] program that focuses on the mental health of the patients.  Respondent was diagnosed with bipolar disorder and was prescribed medication.  Respondent stayed in the residential program for 28 days after which she entered a mental health intensive outpatient program.

III.

On February 9, 2016, the Division determined that the DWI incident constituted a "substantiated" incidence of child neglect.  The letter sent to respondent on that date explained, "[t]he Division's investigation determined that child neglect was Substantiated for Substantial Risk of Physical

---

[4] This term refers to the diagnosis and treatment of persons who suffer from co-occurring substance abuse and a mental health disorders.

A-5307-17T4

Injury/Environment Injurious to Health and Welfare – 10/60 with regard to [R.V.]. You have been identified as a person responsible for the neglect." (capitalization and bold face in original). Appellant filed a timely appeal of the "substantiated" determination and the matter was referred to the Office of Administrative Law (OAL).

An ALJ conducted an evidentiary hearing on February 5, 2018. At that hearing, the Division case worker testified as to the methodology she used to classify the neglect as "substantiated," explaining that she considered and weighed the aggravating and mitigating factors enumerated in N.J.A.C. 3A:10-7.5. Specifically, the case worker found that the following aggravating factors applied: (1) the tender age of the child, who was four; (2) the Division had to remove the child for safety; and (3) there was a pattern of neglect. With respect to the pattern of neglect, the case worker noted that this was the third time the Division was involved with respondent for alcohol-related reasons, and this was the second time that the Division removed the child. The case worker found that one mitigating factor applied because respondent participated in rehabilitation programs while the investigation was still ongoing.[5] Considering all of these

_____

[5] The case worker explained that the "remedial actions" mitigating factor only applies only with respect to actions taken during the investigation, which must

(continued)

circumstances, the case worker concluded that the aggravating factors "clearly outweighed the mitigating factors."

The ALJ decided the case on April 30, 2018, upholding the Division's "substantiated" classification and rejecting respondent's argument that the neglect should have been classified as "established." The ALJ's decision rests on two independent grounds. The ALJ first found that an absolute substantiating circumstance set forth in N.J.A.C. 3A:10-7.4 applied.[6] Specifically, the ALJ concluded that the Division had proved by a preponderance of the evidence that by driving a vehicle while intoxicated with an unsecured child, respondent

---

be completed within sixty days. See N.J.A.C. 3A:10-7.5(b)(1). Respondent argued at the OAL hearing that the judge should have looked at her ongoing rehabilitation efforts beyond the time period of the Division's investigation of the July 2015 DWI incident. The ALJ found that respondent had presented very little evidence of her rehabilitation. We would only add that this is not a parental rights termination proceeding. The only issue before us is whether a specific incident of child neglect is "substantiated." We therefore decline to expand the temporal scope of the remedial action mitigating circumstance defined in N.J.A.C. 3A:10-7.5(b)(1).

[6] The Division did not originally rely on the absolute method of establishing a "substantiated" incidence of neglect. Rather, the case worker's recommendation was based on her weighing of the aggravating and mitigating factors set forth in N.J.A.C. 3A:10-7.5. We do not believe that the classification method employed by the case worker precluded the ALJ from applying the absolute classification method to the facts elicited by the Division at the evidentiary hearing. The Division has since adopted the findings and rationale of the ALJ with respect to both methods for finding that the allegation of child neglect was "substantiated."

"deprived a child of necessary care that created a substantial risk of serious harm." See N.J.A.C. 3A:10-7.4(6). As we have already explained, that finding of an absolute circumstance by itself was sufficient to support the "substantiated" classification of the incident. Indeed, under the Division's regulatory framework, that finding necessitated a "substantiated" classification.

Respondent on appeal nonetheless urges us to rely on excerpted language from our decision in N.J. Div. of Child Prot. & Permanency v. V.E., 448 N.J. Super. 374 (App. Div. 2017), to overturn the ALJ's reliance on this absolute circumstance as the basis for ruling that the neglect was "substantiated." In V.E. we noted that a "'substantiated' finding applies to the most severe cases, and specifically results in matters involving death or near death, inappropriate sexual conduct, serious injuries requiring significant medical intervention, or repeated acts of physical abuse." Id. at 389. We also commented that "the regulatory differentiation between the 'substantiated' and 'established' findings appears to be a question of the degree of harm and, possibly, the strength of the gathered proofs." Ibid. Based on these dicta, respondent urges us to reject the absolute circumstance found by the ALJ because the DWI incident is not a sufficiently severe example of child neglect to warrant an automatic "substantiated" classification.

13

Respondent's reliance on the above-quoted dicta in V.E. is misplaced. The issue in that case was whether the respondent was entitled to an administrative hearing after the Division had determined that the allegation of child abuse and neglect was "established." We had no occasion in V.E. to consider whether a particular set of facts should be classified as "established" rather than "substantiated." Moreover, our characterization that selected absolute circumstances in N.J.A.C. 3A:10-7.4 represent "severe" situations, specifically, those "involving death or near death, inappropriate sexual conduct, serious injuries requiring significant medical intervention, or repeated acts of physical abuse," was not meant to impliedly amend the regulation so that only those particular circumstances would meet the "substantiated" threshold. Nor did we have occasion in V.E. to modify the regulations by authorizing the Division to exercise discretion and determine on a case-by-case basis whether a proven absolute circumstance was sufficiently serious to warrant a "substantiated" classification.

The point simply is that the dicta in V.E. that respondent relies on was meant to highlight the differences between an "established" and "substantiated" finding in the context of determining whether an evidentiary hearing is required as a matter of due process of law, not to alter the regulatory framework's criteria

or process for deciding between these two classifications. It bears emphasis, moreover, that our comments in V.E. did not even mention the sixth enumerated absolute circumstance—"depriving a child of necessary care which either caused serious harm or created a substantial risk of serious harm"—which happens to be the one the ALJ in this case found. V.E. should not be read to invalidate that circumstance as an independently sufficient basis to substantiate an allegation of child abuse or neglect.

We would only add with respect to respondent's argument that in our view, her conduct in this case—drunk driving with an improperly restrained four-year-old in the car—presents a grave and entirely foreseeable risk of death or serious harm that, thankfully, did not come to fruition. We are not prepared to exempt such conduct from the ambit of the absolute method for determining the appropriate classification of child abuse or neglect. In sum, we conclude that the ALJ properly found, applying the preponderance of the evidence standard of proof, that respondent created a substantial risk of serious harm to her daughter by driving under the influence while the child was not properly restrained in the rear seat.

As we have already noted, the ALJ employed what might be described as a "belts and suspenders" approach by considering both methods for determining

that the DWI incident was "substantiated." Although not necessary given the finding that an absolute factor under N.J.A.C. 3A:10-7.4 had been proven, the ALJ also applied the balancing test the case worker had used in recommending a "substantiated" classification. The ALJ found the same aggravating and mitigating factors that the case worker had found, and the ALJ concluded that the aggravating factors outweighed the sole mitigating factor. We conclude from our review of the record that the ALJ's determination that the aggravating factors outweighed the mitigating factor was not arbitrary, capricious, or unreasonable, and was supported by sufficient credible evidence presented at the hearing. This determination by the ALJ and the Division provides an independent and sufficient basis for the "substantiated" classification.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5307-17T4