# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4792-15T3

S.C.,

    Appellant,

v.

NEW JERSEY DEPARTMENT OF
CHILDREN AND FAMILIES,

    Respondent.

_____

        Argued January 16, 2018 - Decided August 31, 2018

        Before Judges Messano, Accurso and Vernoia.
        (Judge Messano concurring).

        On appeal from New Jersey Department of
        Children and Families, Division of Child
        Protection and Permanency, Case No.
        16739248.

        Victoria D. Miranda argued the cause for
        appellant (Williams Law Group, LLC,
        attorneys; Allison C. Williams, of counsel
        and on the brief; Elizabeth D. Burke, on the
        brief).

        Julie B. Colonna, Deputy Attorney General,
        argued the cause for respondent (Gurbir S.
        Grewal, Attorney General, attorney; Andrea
        M. Silkowitz, Assistant Attorney General, of
        counsel; Julie B. Colonna, on the brief).

PER CURIAM

Luke,[1] eight years old and classified as emotionally disturbed, refused to make a Mother's Day card at school, claiming he hated his mother.  When queried as to why, Luke said his mother hits him with an open hand and a spatula.  He claimed she last hit him two days before because he would not get in the shower.

Upon receiving that report from the counselor assigned to work with Luke, the principal called the Division of Child Protection and Permanency.  An investigator responded to the school and learned that Luke was having "a terrible day," coloring on his desk top and generally "distraught."  The counselor advised that was atypical; Luke had had behavioral issues in the past, in kindergarten he ripped down a shelf holding a TV monitor, but now in second grade he was doing much better.

The principal knew Luke and his two sisters, triplets, and was surprised by his revelation.  She said she hated having to call the Division about this family as she had no other concerns about Luke's parents.[2]  Both were very involved in school

---

[1]  Luke is a pseudonym designed to protect the child's identity.

[2]  The school was required to report Luke's disclosure to the Division.  See N.J.S.A. 9:6-8.10.

activities, attending every child study team meeting and responding immediately to calls or email.

When the investigator spoke to Luke, he told her he lived with his parents, his two sisters and their dog, Heidi. He said his mother counts to three a lot. When the investigator asked Luke what happens after she gets to three, he said, "[i]t's inappropriate." When asked if he could say what happens, Luke walked over and whispered, "mom smacks me." He could not, however, say the last time it happened. When asked whether it hurt, he said it "kind of hurts." He also laughed and said he thinks it funny. In the initial report to the Division, the principal recounted that Luke said that once when he was hit, he said it did not hurt, so he got hit again.

Luke told the investigator his father also smacks him with an open hand. He denied ever having marks or bruises afterward. When the investigator asked Luke if his parents ever used anything other than their hands to hit him, he said his mother sometimes used a spatula. Asked where, he said his mother "has hit him on his butt with the spatula." He again, however, could not say when that had last occurred. Luke denied that it hurt, but thought "his butt was a little red" afterward. He denied it hurt the next morning. He was not fearful of either of his parents.

Luke told the investigator "his parents have hit him on the leg and butt." He denied ever being hit in the face. He also denied ever having "any bumps, bruises, or cuts from when his parents hit him." He volunteered that he once got a bump on his head "from when he was trying to put on his underwear while walking down the stairs." The investigator told him that "sounded dangerous" and "encouraged [Luke] to get dressed in one spot."

While at the school, the investigator spoke to each of Luke's sisters individually, one of whom has a specific learning disability. Like their brother, each reported living with her parents, siblings and Heidi, whom one reported had to go to the vet that morning because she hurt her leg jumping over a gate. Both girls reported their parents sometimes hitting them with an open hand but denied them leaving marks or bruises. Both denied ever being hit with a spatula. One of the girls reported arguments among herself, her brother and her sister "over who takes a shower last." When asked how she gets along with her siblings, that same child replied "not that much." She complained that her sister "ruins [her] stuff" and that her brother "says bad words at home." She claimed neither her brother nor her sister listened. Neither girl expressed any fear of her parents.

4

The investigator made an unannounced visit to the children's home that evening. Their father was reluctant to invite her in. When she explained what had been reported to the Division, he responded "it is legal to hit children."

The investigator first interviewed the children's mother, defendant S.C. The investigator learned both parents worked full-time outside the home, and that the triplets attended an afterschool child care program at their school until six p.m.

S.C. admitted that both she and her husband hit the children, occasionally, with an open hand. She told the investigator the triplets were always playing or fighting, "and it gets challenging at times." She explained they were getting too old for timeout, and she was attempting to deploy a new strategy of denying them privileges. She explained the strategy was not working because the children "do not have a good concept of time." So threatening them on Monday with withholding their favorite Friday night pizza and a movie had no moderating effect on their behavior.

The investigator inquired as to the children's special needs. S.C. advised Luke was classified as Emotionally Disturbed in kindergarten because of his "big tantrums," which she attributed to his poor adjustment to kindergarten from daycare. She advised they were "hoping to get his

A-4792-15T3

classification changed."  She mentioned no other problems with Luke.

S.C. denied ever hitting the children with a spatula, but admitted "she smacks the spatula on the counter to get their attention."  She said she will also whistle.  She told the investigator "that she threatens the children" but "does not follow through."  The investigator discouraged the use of physical discipline, as it teaches the children "that hitting solves problems."  She advised S.C. that hitting the children "with objects was inappropriate," which S.C. again denied doing, and counselled her "that she may not be in full control of how much force she is using" if she hits the children when she is upset, thus putting them at risk of harm.  S.C. replied that hitting did not seem to be working, and she would stick to sending the children to their rooms and denying them privileges.

When the investigator interviewed the children's father, he was most interested in knowing who reported the family to the Division.  He admitted he occasionally spanks the children "lightly."  He denied ever using anything other than his hand to do so.  He also denied ever seeing his wife use anything other than her hand to hit the children, but admitting seeing her "use the spatula to hit the counter to get the children's attention."

6

After recording her notes of those interviews, which we have quoted here, the investigator also recorded her impressions that the children appeared clean and well-cared-for and their home likewise. Her collateral investigation, a review of police and criminal justice records and contacting the children's pediatrician, revealed no adverse information of any kind. She concluded the children were safe in their parents' care and the allegations "not established." The case was closed at intake.

Three weeks after interviewing school officials and S.C.'s family, the Division wrote to S.C. of the results of its investigation into "an allegation that [her three children were] abused." The letter was devoid of any discussion of the facts, including the specifics of the allegations. The letter stated the Division "conducted its required investigation and determined that the allegation was Not Established." The letter further explained "the Division enters a finding of 'Not Established' when some evidence indicates that a child was harmed or placed at some risk of harm, but there is not a preponderance of evidence that the child has been abused or neglected per N.J.S.A. 9:6-8.21."[3]

---

[3] The letter states in its entirety:

A-4792-15T3

S.C. appeals, claiming the Division's "finding of Not Established should be deemed arbitrary, capricious and unreasonable because the record is insufficient to find the child was harmed" and that her due process rights were violated by her inability to challenge the Division's "investigatory

> New Jersey Law, as set forth in N.J.S.A. 9:6-8.11, requires the Department of Children and Families (DCF) Division of Child Protection and Permanency (CP&P) to investigate all allegations of child abuse and neglect. On May 4, 2016, the Division's Bergen Central Local Office received an allegation that [Luke and his two sisters were] abused.
>
> CP&P conducted its required investigation and determined that the allegation was Not Established. A record of the incident will be maintained in CP&P files. Current law provides that this information may not be disclosed by the Division except as permitted by N.J.S.A. 9:6-8.10a. A finding of Not Established is not subject to an administrative appeal.
>
> Pursuant to N.J.A.C. 10:129-7.3(c)(3) [now at N.J.A.C. 3A:10-7.3(c)(3)], the Division enters a finding of "Not Established" when some evidence indicates that a child was harmed or placed at some risk of harm, but there is not a preponderance of evidence that the child has been abused or neglected per N.J.S.A. 9:6-8.21.
>
> The Division will not be providing further services to [Luke and his two sisters].

finding through the administrative process." We reject those arguments and affirm.

We first dispense with S.C.'s argument that she was denied due process based on her inability to challenge the Division's investigatory finding in an administrative hearing instead of in this court. N.J.A.C. 3A:5-4.3(a)(2) provides a right to an administrative hearing only for a finding that abuse or neglect allegations have been "substantiated" as defined in N.J.A.C. 3A:10-7.3(c)(1). There is no right to a hearing if such allegations are only determined to have been "not established" or "unfounded."[4] N.J.A.C. 3A:5-4.3(a)(2); see also Dep't of Children & Families v. D.B., 443 N.J. Super. 431, 442 (App. Div. 2015) (rejecting any due process right to a hearing to challenge allegations deemed "not established").

As we explained in D.B., "[a] finding by [the Department] that child abuse charges have not been substantiated, but that

---

[4] Although N.J.A.C. 3A:5-4.3(a)(2) also provides no right to a hearing in cases in which allegations of abuse or neglect are deemed to have been "established," we recently held such a finding is subject to challenge in an administrative hearing. See Div. of Child Prot. & Permanency v. V.E., 448 N.J. Super. 374, 402 (App. Div. 2017) ("We hold when the Division finds parental conduct establishes abuse or neglect of a child, subjecting the individual to the ramifications of disclosure set forth in various identified statutes, a party who seeks to challenge that finding shall be entitled to an administrative hearing.").

A-4792-15T3

there is some indication a child was harmed or placed at risk of harm, is purely investigatory in nature." 443 N.J. Super. at 443 (first alteration added; second alteration in original) (quoting In re R.P., 333 N.J. Super. 105, 117 (App. Div. 2000)) (considering a finding that allegations of abuse or neglect were "not substantiated" under the prior framework of N.J.A.C. 10:129-7.3(c)). "There is a fundamental distinction between investigatory and adjudicatory findings. An investigator simply interviews witnesses and examines other available evidence, reviews and analyzes this information and makes a recommendation as to whether any action should be taken against the subject of the investigation." R.P., 333 N.J. Super. at 116-17. There is no definitive finding as to the truth of the allegations by a disinterested, impartial third party as there would be an adjudicatory proceeding. Ibid.

Significantly, allegations of abuse deemed "not established" by the Division are not made public, the accused's name is not included in the Central Registry and the finding is not disclosed in connection with a Child Abuse Record Information (CARI) check. See N.J.A.C. 3A:10-7.7; D.B., 443 N.J. Super. at 439, 443; cf. Div. of Child Prot. & Permanency v. V.E., 448 N.J. Super. 374, 380, 402 (App. Div. 2017) ("established" finding is a conclusion that abuse or neglect

occurred authorizing disclosure). That the Division retains the records of an incident deemed "not established," N.J.A.C. 3A:10-8.1(b), is not sufficient to entitle S.C. to an adjudicatory hearing. See V.E., 448 N.J. Super. at 380, 402 (distinguishing an "established" finding of child abuse or neglect under N.J.S.A. 9:6-8.21(c)(4), subject to disclosure under N.J.S.A. 9:6-8.10a(b), as requiring plenary administrative review).

"[T]he interest of retaining information about alleged claims of abuse, where some cause for concern is demonstrated, is within the mandate given to the Department to protect children from abuse." D.B., 443 N.J. Super. at 444. As we have previously explained, there is a "lesser due process right in regard to information kept for the use of the agency and entities involved in the protection of children." Ibid. An investigatory finding that abuse or neglect was "not established," the record of which is not disseminated in response to a CARI check, simply does not impugn S.C.'s reputational or privacy interests to an extent that would trigger the need for an adjudicatory hearing. See V.E., 448 N.J. Super. at 395 (distinguishing the "broad impact accompanying an established finding").

We turn to consider S.C.'s claim that the Division's finding that the report of Luke's abuse was "not established" as

11

opposed to "unfounded" was arbitrary or capricious. See <u>N.J.</u>
<u>Dep't of Children & Families v. R.R.</u>, 454 N.J. Super. 37, 43
(App. Div. 2018). In doing so, we remain mindful of the Supreme
Court's admonition that we are to "defer to an agency's
expertise and superior knowledge of a particular field." <u>Dep't</u>
<u>of Children & Families, Div. of Youth & Family Servs. v. T.B.</u>,
207 N.J. 294, 301 (2011) (quoting <u>Greenwood v. State Police</u>
<u>Training Ctr.</u>, 127 N.J. 500, 513 (1992)). Here, that would be
the Division's superior knowledge and expertise in investigating
and assessing an eight-year-old's allegation that one of his
parents has engaged in excessive corporal punishment.

Although not capable of precise definition, "abuse of
discretion" "arises when a decision is 'made without a rational
explanation, inexplicably departed from established policies, or
rested on an impermissible basis.'" <u>Flagg v. Essex Cty.</u>
<u>Prosecutor</u>, 171 N.J. 561, 571 (2002) (quoting <u>Achacoso-Sanchez</u>
<u>v. Immigration and Naturalization Serv.</u>, 779 F.2d 1260, 1265
(7th Cir. 1985)). As the Court has put it, "a functional
approach to abuse of discretion examines whether there are good
reasons for an appellate court to defer to the particular
decision at issue." <u>Ibid.</u> In exercising our review function,
we serve "as a guardian" of the statute we are applying "to
insure that its mandate is fulfilled." <u>Crema v. N.J. Dep't of</u>

Envtl. Prot., 192 N.J. Super. 505, 511 (App. Div. 1984) (quoting S. Brunswick v. N.J. Tpk. Auth., 129 N.J. Super. 126, 137 (App. Div. 1974)).

"An allegation shall be 'not established' if there is not a preponderance of the evidence that a child is an abused or neglected child as defined in N.J.S.A. 9:6-8.21, but evidence indicates that the child was harmed or was placed at risk of harm." N.J.A.C. 3A:10-7.3(c)(3). Only if "the evidence indicates that a child was not harmed or placed at risk of harm," is the allegation deemed "unfounded." N.J.A.C. 3A:10-7.3(c)(4). As the Division has explained, "[t]he critical distinction between findings of not established and unfounded is that not established findings are based on some evidence, though not necessarily a preponderance of evidence, that a child was harmed or placed at risk of harm." 45 N.J.R. 738(a) (April 1, 2013) (response to Comment 86).

There is no dispute that there was not a preponderance of evidence here that S.C. abused her son Luke. The only issue is whether the Division abused its discretion in determining there was "some evidence . . . that [he] was harmed or placed at risk

of harm" by excessive corporal punishment under N.J.S.A. 9:6-8.21.[5]

New Jersey law does not bar the corporal punishment of children by their parents. See Dep't of Children & Families, Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504, 510 (App. Div. 2010). It is only the unreasonable infliction of excessive corporal punishment that Title 9 prohibits. See N.J.S.A. 9:6-8.21(c)(4)(b). "The general proposition is that a parent may inflict moderate correction such as is reasonable under the circumstances of a case." K.A., 413 N.J. Super. at

---

[5] The statute provides in pertinent part that an abused or neglected child means a child under the age of 18

> whose parent or guardian . . . inflicts or allows to be inflicted upon such child physical injury by other than accidental means which causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted impairment of physical or emotional health or protracted loss or impairment of the function of any bodily organ; . . . or a child whose physical mental or emotional condition has been impaired or is in imminent danger of becoming impaired [by a parent] . . . by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment. . . .
>
> [Dep't of Children & Families, Div. of Youth & Family Servs. v. K.A., 413 N.J. Super. 504, 510 (App. Div. 2010) (quoting N.J.S.A. 9:6-8.21(c)(1),(4)(b)).]

14                                                    A-4792-15T3

510 (quoting State v. T.C., 347 N.J. Super. 219, 239-40 (App. Div. 2002)).

In the absence of per se excessive punishment, that is, the infliction of a fracture, or serious laceration, or where medical intervention is necessary, whether corporal punishment is excessive is fact-sensitive and dependent on the circumstances. K.A., 413 N.J. Super. at 511. It is fair to say, however, that the use of an implement to strike a young child, particularly when the incident was not an isolated one, has resulted in our upholding the Division's finding of excessive corporal punishment. See, e.g., N.J. Div. of Child Prot. & Permanency v. J.L.G., 450 N.J. Super. 113, 118 (App. Div. 2015) (beating a seven-year-old with fists and a metal spatula), aff'd o.b., 229 N.J. 113 (2017); Dep't of Children & Families, N.J. Div. of Youth & Family Servs. v. C.H., 414 N.J. Super. 472, 476 (App. Div. 2010) (hitting a five-year-old with a paddle); N.J. Div. of Youth & Family Servs. v. B.H., 391 N.J. Super. 322, 340 (App. Div. 2007) (hitting a six-year-old with a belt).

Having reviewed this record, we cannot conclude the Division's investigatory finding of "some evidence" indicating that S.C. placed Luke at risk of harm from excessive corporal punishment was arbitrary or capricious or lacked fair support in

15

the record.  See State v. S.N., 231 N.J. 497, 515 (2018)

(explaining the abuse of discretion standard).

Luke told school officials his mother hit him with a

spatula as well as with an open hand.  He repeated those

allegations the following day to the Division investigator.

Luke's father, sisters and even his mother corroborated that she

struck Luke with an open hand on "his butt and legs" on more

than one occasion.  No one, however, corroborated Luke's more

serious allegation that his mother used a spatula to strike him

as well.

Luke's statements would constitute admissible evidence in a

Title 9 proceeding, although because his allegation of having

been hit with a spatula was uncorroborated, it could not,

standing alone, support a finding of abuse or neglect.  See

N.J.S.A. 9:6-8.46(a)(4) ("[P]revious statements made by the

child relating to any allegations of abuse or neglect [are]

admissible in evidence; provided, however, that no such

statement, if uncorroborated, shall be sufficient to make a fact

finding of abuse or neglect.").  In her brief, S.C. notes that

Luke is emotionally disturbed, and asserts that "a finding of

anything other than 'Unfounded' would place all parents falsely

accused by the uncorroborated statements of an Emotionally

16

Disturbed child at risk of being found to have harmed their children."

Leaving aside the hyperbole, neither school officials nor Luke's family suggested Luke was prone to making things up, such that one could dismiss his allegations out of hand. The investigator explored Luke's classification and his behavioral issues. Both the school and Luke's mother reported he had significant behavioral problems in kindergarten but both assessed his behavior as now much improved. Indeed, his mother reported she was seeking to have Luke's classification changed.

Viewing the information gathered might reasonably lead a Division investigator to conclude there was "some evidence," certainly less than a preponderance, indicating that S.C. had placed Luke at risk of harm, leading to a "not established" finding. S.C., although denying she ever used a spatula to hit Luke, acknowledged she hit Luke and his sisters with an open hand. She also admitted to slapping the spatula on her kitchen counter to get the triplets' attention and "threatening them" but "not following through."

S.C. complained her three second-graders were always "playing or fighting" and admitted she found their behavior "challenging at times." She expressed her frustration at the ineffectiveness of timeouts and the withholding of privileges in

17

moderating their behavior and conceded hitting them did not appear to be working either. Luke's principal reported that Luke claimed that once when he got hit, he said it did not hurt, so he got hit again. Taken together, those facts provide "some evidence" indicating that S.C. hit the children, even without a spatula, when she was upset with their behavior, leading to the possibility that she could misgauge how much force she was using and put them at risk of harm.

We emphasize that a "not established" finding of "some evidence" indicating that a child was "harmed or was placed at risk of harm" is a low standard, and represents only an investigatory finding without significant adverse consequences to a parent.[6] As we recently noted, "placing a child 'at risk of harm' may certainly involve a lesser risk than the 'substantial

---

[6] S.C.'s contention that the "not established" finding may be used as an aggravating factor under N.J.A.C. 3A:10-7.5(a)(6) in determining whether a future allegation of abuse or neglect should be substantiated or established is incorrect. N.J.A.C. 3A:10-7.5(a)(6) permits only "evidence suggesting a repetition or pattern of abuse or neglect, including multiple instances in which abuse or neglect was substantiated or established," to be used as an aggravating factor.

As the Court has reminded, however, even when the consequences to a parent are significant, the conduct must be "evaluated through the lens of the statutory standard as interpreted and applied by the Court, rather than through the lens of the consequences of a finding of neglect, specifically, enrollment in the Central Registry." Dep't of Children & Families, Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 195 (2015).

risk of harm' or 'imminent danger' required to establish abuse or neglect under" N.J.S.A. 9:6-8.21(c). R.R., 454 N.J. Super. at 42. Indeed, the Division has explained it employs a "not established" finding "when a preponderance of the evidence indicates that the statutory standard has not been met." 45 N.J.R. 738(a) (April 1, 2013) (response to comment 45).

Mindful that "Title 9's main focus is not the 'culpability of parental conduct' but rather 'the protection of children,'" Dep't of Children & Families, Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 178 (2015) (quoting G.S. v. Dep't of Human Servs., 157 N.J. 161, 177 (1999)), we cannot conclude the investigator's finding that the report of Luke's abuse was "not established" as opposed to "unfounded," in other words, that there was some evidence indicating the boy was placed at risk of harm as opposed to no evidence, lacked a rational explanation, departed from established policies, or rested on an impermissible basis.

To the contrary, the record of the investigation reveals a conscientious investigator, thoroughly pursuing all relevant information, with no discernible bias, who established an easy rapport with these three eight-year-olds. S.C. points to nothing left undone, and our review finds the investigator was quick to both record and take into account all information,

including information supporting a conclusion that Luke and his sisters were safe and well-cared for by their parents and had been placed at no risk of harm.

The competence and completeness of the investigation in this case is what distinguishes it from our recent decision in R.R.,[7] in which we reversed a not established finding by the Division and directed the allegation be deemed unfounded because the Division investigator "failed to consider essential documents and relevant facts," resulting in a one-sided investigation and a finding lacking fair support in "the record the Division did compile."  R.R., 454 N.J. Super. at 46.

The Legislature has charged the Division with the statutory mission of the protection of the health and welfare of the children of this State.  N.E. for J.V. v. State Dep't of Children & Families, Div. of Youth & Family Servs., 449 N.J. Super. 379, 398 (App. Div. 2017).  The child-welfare laws it administers "strike a balance between two competing public

---

[7]  Although we endorse both the reasoning and the result in R.R., we disagree with the dictum that a "not established" finding "is not what it seems" and "still permanently tars a parent with a finding that there was something to the allegation."  R.R., 454 N.J. Super at 39.  We fail to see how an investigatory finding that abuse and neglect is "not established," which is not made public or otherwise disseminated, "permanently tars" anyone with anything.  See Middletown Tp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 16 (2007) (noting "the dangers inherent in dictum").

A-4792-15T3

policy interests: a parent's constitutionally protected right 'to raise a child and maintain a relationship with that child, without undue interference by the state,' and 'the State's parens patriae responsibility to protect the welfare of children.'" Ibid. (quoting N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 18 (2013)). As we can find no flaw in the investigation done here, and thus no dereliction in the Division's discharge of its statutory responsibilities, reversing the Division's investigatory finding and directing Luke's allegation be treated as unfounded instead of not established would be merely substituting our judgment for the Division's, a result plainly not permitted us. See In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 384 (2001) (noting that "when reviewing an administrative agency's factual findings, our function is not to substitute our judgment for that of the agency, particularly when that judgment reflects agency expertise").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4792-15T3

**MESSANO, P.J.A.D., concurring.**

I agree that denying S.C. an administrative hearing at which to challenge the "not established" finding did not violate her due process rights. Ante at ___ (slip op. at 9-11); D.B., 443 N.J. Super. at 442. I also agree that given our highly deferential standard of review of agency action, ante at ___ (slip op. at 12), the Division's decision was not "arbitrary, capricious or unreasonable," nor did it lack "fair support in the record." R.R., 454 N.J. Super. at 43 (citation omitted).

Pursuant to N.J.A.C. 3A:10-7.3(c)(3), the Division needed only to establish that S.C.'s conduct "placed [the children] at risk of harm," not that the children were abused or neglected, i.e., that they faced a "'substantial risk of harm' or 'imminent danger' required to establish abuse or neglect under [N.J.S.A. 9:6-8.21(c)]." R.R., 454 N.J. Super. at 42. In adopting the regulations, the Division made clear that a "not established" finding — as opposed to an "unfounded" finding — is "based on <u>some evidence</u>, though not necessarily a preponderance of evidence, that the child was harmed or placed at risk of harm." Id. at 40-41 (emphasis added) (quoting 45 N.J.R. 738(a) (response to Comment 45)). Unlike the facts in R.R., we have amply documented the thorough investigation conducted by the Division in this case,

<u>ante</u> at ___ (slip op. at 2-7). Therefore, although it is tempting to substitute my judgment for that of the agency, "[d]eference controls." <u>In re Herrmann</u>, 192 N.J. 19, 28 (2007). I write separately to express two concerns.

First, I am only convinced there is "some evidence" to support the finding in this case because of our own extensive review of the record, which documents the Division's investigation and its results. The letter actually served on S.C. by the Division did nothing but parrot the regulatory language and advise S.C. of the consequences of the finding. <u>Ante</u> at ___ (slip op. at 7 n.3). It did not state, for example, what facts disclosed by the investigation established "some evidence" that S.C. placed the children at risk of harm. For example, did the investigator determine that Luke's claim that his mother hit him with a spatula was credible? Was S.C.'s admission that she sometimes spanked and threatened the children sufficient to conclude that she exposed the children to the risk of harm? In short, the letter fails to state, even in conclusory terms, what evidence supported the finding.

"Judicial review of administrative agency action is a constitutional right." <u>Silviera-Francisco v. Bd. of Educ. of City of Elizabeth</u>, 224 N.J. 126, 136 (2016) (citing <u>N.J. Const.</u> art.

2

VI, § 5, ¶ 4). The lack of any factual findings in the letter sent to S.C. inhibits appellate review, to which S.C. and others against whom findings of abuse and neglect are "not substantiated" are entitled to as of right. D.B., 443 N.J. Super. at 442 (citing R. 2:2-3(a)(2)). The Appellate Division should not be required to comb through the record to determine whether it "contains substantial evidence to support" the Division's determination. See Lavezzi v. State, 219 N.J. 163, 171-72 (2014) (explaining the standards of appellate review as to whether agency action is arbitrary, capricious or unreasonable) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)). When an agency's decision is not accompanied by the necessary findings of fact, the usual remedy is to remand the matter to the agency to correct the deficiency. DiMaria v. Bd. of Trs., Pub. Employees' Ret. Sys., 225 N.J. Super. 341, 347 (App. Div. 1988).

Although I concur in this case without the necessity of a remand, the Division should hereafter be on notice that merely parroting regulatory language without specific findings in support of the determination is unacceptable. Such continued practice will undoubtedly result in remands from this court and the additional drain on precious agency resources.

3

My concern about the perfunctory nature of the letter segues into the second reason why I write separately. When the Division first proposed the expanded "four-tier framework" to report outcomes of its child abuse investigations, R.R., 455 N.J. Super. at 40, it did so with the expressed purpose of "allow[ing] the investigative findings and records to better reflect the circumstances of an investigation." 44 N.J.R. 357(a) (Feb. 21, 2012). According to the Division, "add[ing] two intermediary investigative findings, 'established' and 'not established,' . . . would allow child protective investigators more latitude to accurately reflect the nature of their conclusions regarding allegations of abuse or neglect." Ibid. The letter in this case hardly reflected "the circumstances of the investigation," nor did it "reflect the nature" of the investigators' "conclusions" about S.C.'s conduct.

Importantly, like "substantiated" and the newly-adopted "established" findings, both of which require a finding by a preponderance of evidence that the child was abused or neglected, N.J.A.C. 3A:5-4.3(a)(1) and (2), the records of "not established" findings, which by definition are determinations that there was no abuse or neglect, N.J.A.C. 3A:5-4.3(d), are not subject to expunction. N.J.S.A. 9:6-8.40a(a); N.J.A.C. 3A:10-8.1. The

4

Division explained the reason for this when it first proposed the regulatory change: "[T]he inclusion of the 'not established' finding will allow the Division to retain records where a child is found to have been harmed or placed at risk of harm. This will allow the Division to have a better and more comprehensive understanding of a family should additional referrals be received by the Division in the future." 44 N.J.R. 357(a) (Feb. 21, 2012). The Division responded to comments objecting to prohibiting expunction of "not established" records when it adopted the four-tier framework:

> The [Division] declines to change the rule. N.J.S.A. 9:6-8.40a authorizes the [Division] to define "unfounded" by regulation. The critical distinction between findings of not established and unfounded is that not established findings are based on some evidence, though not necessarily a preponderance of evidence, that a child was harmed or placed at risk of harm. <u>Because the investigation of future allegations must include consideration of past incidents in which an involved child was harmed or placed at risk of harm, the critical information contained in records of not established cases must be maintained</u>.
>
> [45 N.J.R. 738(a) (Apr. 1, 2013) (response to comment 86) (emphasis added).]

Thus, I agree with the panel in <u>R.R.</u> that a not established finding "still permanently tars a parent with a finding that there was something to the allegation." 454 N.J. Super. at 39.

5

As already noted, because a "not established" finding is purely investigative in nature and is not made public through inclusion of the perpetrator's name on the Central Registry or during a CARI check, I agree that S.C.'s due process rights were not violated. D.B., 443 N.J. Super. at 443. However, the permanent retention of "not established" findings means that records continue to be subject to disclosure in a host of situations. See N.J.S.A. 9:6-8.10a(b). For example, since they are not subject to expungement, the Division's "records," "information," and "reports of findings" of a "not established" determination would be accessible upon written request to "[a]ny person or entity mandated by statute to consider child abuse or neglect information when conducting a background check or employment-related screening of an individual employed by or seeking employment with an agency or organization providing services to children." N.J.S.A. 9:6-8.10a(b)(13).

Relying on prior precedent, in D.B., we remanded the matter for the Division to provide more accurate letters it was required by statute to disseminate to others that stated

> after the conflicting witness statements are
> presented, that no determination as to the
> accuracy of the statements has been made. If
> a statement that there were allegations that
> a child was harmed or put at risk of harm is
> included within the "Investigative

6

Observations" section of the letters, it must be followed by the language that "there has been no determination of the accuracy of [the] allegations."

[443 N.J. Super. at 446 (quoting In re R.P., 333 N.J. Super. 105, 117 (App. Div. 2000)).]

Here, there is no required dissemination to third parties of the Division's not established finding regarding S.C., and, therefore, I concur without the need to remand for letters that are more specific. Nevertheless, since the records of "not established" referrals live on forever within the Division, and those records are accessible in many circumstances, it is incumbent that the Division accurately express its findings and conclusions in sufficient detail. Only then will it achieve its stated purpose, i.e., "to accurately reflect the nature of [its] conclusions regarding allegations of abuse or neglect," 44 N.J.R. 357(a) (Feb. 21, 2012) and provide a "better and more comprehensive understanding of a family should additional

referrals be received by the Division in the future."[1]  Ibid.

---

[1] In D.B., 443 N.J. Super. at 444-45, the panel rejected the appellants' argument that the Division exceeded its "regulatory authority."  While the exact nature of that challenge is unclear from our colleagues' decision, because this appeal does not raise a facial challenge to the four-tier regulatory scheme, I choose not to consider whether creating four categories of

7

I concur in the judgment.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

findings, in conjunction with the ban on expunction for all but "unfounded" findings, exceeds the Division's enabling legislation.

8